**MANPOWER TEMPORARY SERVICES, Employer, and Liberty Mutual Insurance Company, Insurance Carrier, Appellants,**

v.

**Miya SIOSON, Claimant, Appellee.**

No. 93–1825.

Supreme Court of Iowa.

Feb. 22, 1995.

Rehearing Denied March 29, 1995.

Vicki L. Seeck of Betty, Neuman & McMahon, Davenport, for appellants.

Paul J. McAndrew, Jr. of Meardon, Sueppel, Downer & Hayes, P.L.C., Iowa City, for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, LAVORATO, and SNELL, JJ.

HARRIS, Justice.

Is a workers' compensation insurer required to provide a van (the insurer agrees to convert and equip it) for a worker who became a quadriplegic as a result of injuries sustained on the job? Under the extraordinary circumstances appearing here, we think the industrial commissioner was not incorrect in answering yes. A threshold question is the insurer's challenge to the statutory avenue chosen to present the key question. Both parties appeal from the district court's

decision on judicial review. That decision allowed most, but not all, the commissioner's award. We affirm on both appeals.

The facts are largely stipulated, and all agree they are inordinately tragic. Miya Sioson formerly worked for Manpower Temporary Service as a temporary office worker. Manpower assigned her to work at the University of Iowa where she, along with other university employees, was shot by a crazed university student. The gunman later committed suicide. It is agreed that Miya's injuries and resulting conditions were work related. She survived the attack but suffered what the deputy commissioner found to be a "C-4 quadriplegia, motor and sensory complete." The nature and extent of her injuries are likewise undisputed.

Like the district court, we quote and adopt the following from the deputy commissioner's findings:

Following initial treatment of her wounds at University Hospitals, she was treated at the Rehabilitation Institute of Chicago. Since her discharge from the institute, [Miya] is able to independently direct all of her care but continues to date to be dependent in transfers, positioning, feeding, bathing, dressing, and bowel and bladder control. [Miya] has now returned to Iowa City where she resides. [She] currently is under the care of a family physician, Melanie Cleveland, M.D., from Iowa City, Iowa. The closest, available rehabilitation care for her condition is from Ellen M. Ballard, M.D., psychiatrist, located at St. Luke's Hospital in Cedar Rapids, Iowa. However, [Miya] is only occasionally seeing these physicians on an as-need basis. [She] is to return briefly next month to the Chicago Institute and apparently defendants are willing to fly her there. To date, [Miya's] extensive medical treatment, 24–hour care and transportation expenses, have been furnished by defendants at no cost to [her]. [Miya] has received and is continuing to receive weekly workers' compensation benefits.

For transportation, [Miya] primarily uses an electric "puff and sip" wheelchair. For longer distances, she must be physically transferred to a passenger vehicle which necessitates use of a manual wheelchair operated by care givers. The electric chair weighs in excess of 300 pounds and cannot be practically transferred by auto. [Miya] is totally dependent upon others in the transfer process between the wheelchair and a passenger car. At the present time, [Miya] has no automobile and is transported by use of automobiles furnished by friends, relatives, or her primary care givers. Also available to [Miya] in the Iowa City area is a "Bionic Bus" and "Johnson County Lifts" services which have the capability of transporting [Miya] in her electric wheelchair. These services are free but must be scheduled. Such services are of no use to [Miya] on trips outside of Iowa City and at times when scheduling is difficult or impossible.

Much medical evidence supported the deputy's conclusion that the van is a medical necessity. Dr. Ballard, the psychiatrist mentioned in the deputy's findings, said "the use of a special vehicle is definitely indicated for Miya." Dr. Cleveland said she strongly recommended the van because Miya's "health would be best served by her being able to be transported to Cedar Rapids and elsewhere in a van that can accommodate her wheelchair...." The same view was endorsed by Miya's physical therapist.

Susan L. Rayner, M.D., concurred in the recommendation and explained:

With the use of a sip and puff electric wheelchair, Ms. Sioson is able to be mobile on level surfaces outdoors. In order to travel long distances, she must be transferred into an automobile and, because of the size and weight of the electric wheelchair, cannot have it transported with her—this leaves her dependent upon someone to push a manual wheelchair once she reaches her destinations. Transferring in and out of a standard automobile can lead to sheering and improper positioning, resulting in pressure sores. This is a medical complication that can lead to costly inpatient medical care. In addition, transferring in and out of an automobile is a safety risk for the patient and her caretakers. She is at risk of being dropped or positioned in ways that can lead to muscu-

loskeletal injuries and fractures, again, costly medical complications.

The evidence is clear that Miya does not seek a van for family use or in accordance with her pre-injury lifestyle. She is a single person who did not own or desire a motor vehicle before being injured, then preferring walking or traveling by bicycle, or by public transportation.

The deputy industrial commissioner accordingly ordered:

Defendant shall furnish to claimant, without cost a vehicle or van specially equipped in the manner set forth in the report of the Rehabilitation Institute of Chicago, dated January 12, 1993, including all reasonable and necessary maintenance, repairs, and insurance. Other details such as title, license, and specific model, year, and type is the choice of employer so long as the vehicle provided is suitable for the necessary modifications. Fuel for any such vehicle shall be the responsibility of claimant. This specially-equipped van may be used by claimant for any transportation purpose.

On judicial review the district court affirmed the order to provide the van and its modifications. The order providing for necessary replacements was also affirmed. The order was however modified, a matter subject to the cross-appeal, in that Miya was ordered to pay the cost of maintenance, repair, fuel, title, license, and insurance.

■■■ I. The purpose of judicial review is for correction of errors at law, not for a de novo review of the evidence. We apply the standard of section 17A.19(8) of the Iowa Code to determine whether its legal conclusions are the same as those reached by the district court. *Mortimer v. Fruehauf Corp.,* 502 N.W.2d 12, 14 (Iowa 1993). If the conclusions are the same we affirm. *Id.* The findings of the commissioner have the effect of a jury verdict, and should be affirmed if supported by substantial evidence. *Kostelac v. Feldman's Inc.,* 497 N.W.2d 853, 856 (Iowa 1993). Ample precedent supports the canon that workers' compensation statutes are construed liberally in favor of the worker. *Mortimer,* 502 N.W.2d at 14.

■■ II. Petitioner Manpower and its insurer, Liberty Mutual Insurance Company (hereafter Manpower), argue that Miya's request for a van is not for "care" as contemplated by Iowa Code section 85.27 (1993). Manpower moved the commissioner to dismiss Miya's action on this ground. Under that section an employer is obligated to furnish reasonable services and supplies to treat an injured employee and has the right to choose the care. The pertinent language of the statute provides:

For purposes of this section, the employer is obliged to furnish reasonable services and supplies to treat an injured employee, and has the right to choose the care. The treatment must be offered promptly and be reasonably suited to treat the injury without undue inconvenience to the employee. If the employee has reason to be dissatisfied with the care offered, the employee should communicate the basis of such dissatisfaction to the employer, in writing if requested, following which the employer and the employee may agree to *alternate care* reasonably suited to treat the injury. If the employer and employee cannot agree on such *alternate care,* the commissioner may, upon application and reasonable proofs of the necessity therefor, allow and order other care.... An application made under this paragraph shall be considered an original proceeding for purposes of commencement and contested case proceedings under section 85.26. The hearing shall be conducted pursuant to chapter 17A.... The industrial commissioner shall issue a decision within ten working days of receipt of an application for *alternate care* made pursuant to a telephone hearing or within fourteen working days of receipt of an application for *alternate care* made pursuant to an in-person hearing. The employer shall notify an injured employee of the employee's ability to contest the employer's choice of care pursuant to this paragraph.

Iowa Code § 85.27 (fourth unnumbered paragraph) (emphasis added).

A separate paragraph of the section provides:

The employer, for all injuries compensable under this chapter or chapter 85A, shall furnish reasonable surgical, medical, dental, osteopathic, chiropractic, podiatric, physical rehabilitation, nursing, ambulance and hospital services *and supplies* therefor and shall allow *reasonably necessary transportation expenses* incurred for such services. The employer shall also furnish reasonable and necessary crutches, artificial members and *appliances....*

Iowa Code § 85.27 (first unnumbered paragraph) (emphasis added).

Iowa Code section 85.27 is interpreted in 343 Iowa Administrative Code 4.48, which states, in relevant parts:

4.48(2) *Purpose.* The purpose of this rule is to establish the procedures for issuing decisions on applications for alternate care within the time provided in Iowa Code section 85.27.

4.48(3) *Definitions.* The following definitions apply to this rule:

"*Application for alternate care,*" hereinafter referred to as application, shall mean a contested case proceeding filed with the industrial commissioner which requests alternate care pursuant to Iowa Code section 85.27.

. . . .

4.48(14) *Decision.* A decision will be issued within 10 working days of receipt of a proper application when a telephone hearing is held or within 14 working days of receipt of a proper application when an in-person hearing is held.

343 Iowa Admin.Code 4.48.

■ Although we hold the final responsibility and authority in statutory construction, we defer to an agency's expertise when interpreting statutes pertaining to that agency's work. *Second Injury Fund of Iowa v. Braden,* 459 N.W.2d 467, 468 (Iowa 1990); *Graves v. Eagle Iron Works,* 331 N.W.2d 116, 117 (Iowa 1983). We find no reason to disagree with the agency's interpretation of "alternate care" here.

Manpower thinks the term "care" in section 85.27 refers only to services rendered by health care professionals such as doctors, as opposed to providing such things as crutches, artificial members, and appliances. The argument fails when we consider all the provisions of section 85.27 together. *See Mortimer,* 502 N.W.2d at 14 (courts must consider all parts of statute together without attributing undue importance to any single or isolated portion).

The alternate care provision must be viewed against the background of the insurer's obligation to provide services and supplies, and the injured worker's rights disagree with the care offered. The disputed language appears in that part of Iowa Code section 85.27 which establishes the procedure for resolving disagreements between the insured and the worker on what alternate care should be provided.

■ We believe and hold "care" in the procedure paragraph also includes services and supplies, as suggested in the first paragraph of the same statute. There is nothing in the Code to indicate the legislature intended the narrow construction of the term advocated by Manpower. *See Mortimer,* 502 N.W.2d at 14 (courts must avoid strained, impractical or absurd results in favor of sensible, logical construction; workers' compensation statutes are to be construed liberally). The term "care" in medical context means "prevention or alleviation of a physical or mental defect or illness." *See, e.g., Browning v. Burt,* 66 Ohio St.3d 544, 613 N.E.2d 993, 1003 (1993). The term includes such things as crutches, artificial members, and appliances because these things, just as services by health care professionals, prevent or alleviate physical or mental defects or illnesses.

The commissioner did not err in refusing to dismiss Miya's action.

■ III. Manpower also assigns error in the deputy's finding that the modified van constituted "reasonable medical care, appliances, or transportation" under Iowa Code section 85.27. Because it is disputed, the reasonableness part of the question is factual. *Stufflebean v. City of Fort Dodge,* 233 Iowa 438, 441, 9 N.W.2d 281, 283 (1943). And, because the substantial evidence we have outlined supports the commissioner's

finding of reasonableness, the district court correctly affirmed it.

■ The key question remains: whether the modified van constituted medical care, appliance, or transportation as contemplated by the statute. Although factual situations supporting such a finding would be extremely rare, we, like the district court, agree that the commissioner could find one here.

We begin with the unusually strong medical evidence of necessity and of the record that Miya's family status and past lifestyle reveal no other use for the van. That evidence refutes any contention that the van is a frill or luxury and reveals what can be described as an appliance, not greatly different from crutches or a wheelchair. The point is that a van is necessary in order to make Miya's wheelchair fully useful.

In another context, like other courts, we have agreed with the dictionary definition that describes the term "appliance" as "a means to an end." *Murray v. Royal Indem. Co.*, 247 Iowa 1299, 1301, 78 N.W.2d 786, 787 (1956). The "end" of the van is merely an extension of Miya's 300-pound wheelchair. Without a van she is, more than need be, a prisoner of her severe paralysis. The commissioner could thus reasonably view the van as an appliance, a necessary part of Miya's care.

We also find no error in this assignment.

■ IV. By way of cross-appeal Miya challenges the district court's disallowance of part of the commissioner's award (cost of the van's repair, fuel, title, license and insurance). The district court determined Miya should bear these expenses because the van would be in her control.

In challenging the disallowance, Miya points to the lack of statutory authority to apportion reasonable medical expenses. We reject the challenge because we do not understand the disallowance to be an apportionment among reasonable expenses, but rather a determination that the disallowed items are not reasonable as medical expenses.

This is because it is exclusively up to Miya to set the extent of these purchases. She will control the amount the van is driven. This amount will in turn directly control the amount of fuel consumed and greatly affect the extent of necessary repairs. Miya will also control, for the most part, the extent of insurance coverage to be purchased. She may or may not choose to purchase special license plates. These choices are not matters of medical necessity.

**AFFIRMED ON BOTH APPEALS.**