MATNEY v SOUTHFIELD BOWL

Docket Nos. 175724, 175848, 176002. Submitted July 11, 1996, at Lansing.
Decided August 27, 1996, at 9:00 A.M. Leave to appeal sought.

Phyllis A. Matney sustained a work-related knee injury in 1984 and
her employer, Southfield Bowl, and its worker's compensation
insurer, Central National Insurance Company, voluntarily paid her
weekly wage-loss benefits based on her average weekly wage of
$150 with no fringe benefits. She underwent knee surgery in 1985,
but has not worked since the injury. In May 1990, she applied for a
hearing, seeking benefits for certain nursing or attendant-care ser-
vices performed by her adult daughter, and in March 1991, she
amended her application to add a claim for a weekly wage-loss
benefit rate increase pursuant to MCL 418.356(1); MSA
17.237(356)(1), which provides for a one-time increase after two
years of continuous compensable disability. The Second Injury
Fund was added as a defendant because of its reimbursement lia-
bility under § 356(1). Following a hearing, the worker's compensa-
tion magistrate granted the plaintiff the maximum increase allowed
under § 356(1), fifty percent of the $370.65 state average weekly
wage applicable in 1984 or $185.33 a week. The magistrate refused
to apply retroactively the one-year-back rule of MCL 418.381(3);
MSA 17.237(381)(3), which was enacted in 1985, but did not grant
all of the nursing or attendant-care benefits requested. The magis-
trate allowed reimbursement for fourteen hours a week, at mini-
mum wage, for a closed one-year period commencing on the date
of the plaintiff's knee surgery in 1985 and also awarded an open
award of benefits for seven hours a week, for the preparation of
the plaintiff's meals only, commencing on August 27, 1990, the date
from which, according to the plaintiff's expert, there was a progres-
sive deterioration in the plaintiff's condition and self-care capacity.
The Worker's Compensation Appellate Commission affirmed the
magistrate's decision to award a rate increase under § 356(1), but
found that the award of the maximum allowable rate increase was
not supported by the evidence and modified the magistrate's award
to reduce the weekly benefit rate to $132. The WCAC affirmed the
closed award of benefits for nursing or attendant-care services, but
reversed the open award of benefits beginning on August 27, 1990.

All the parties appeal by leave granted. The appeals were consolidated.

The Court of Appeals *held*:

1. The evidence regarding the increase in the base salary for the plaintiff's former job in the years after her injury to $200 a week was sufficient to support the benefit rate increase under § 356(1). The evidence constituted "other documented evidence which would fairly reflect the employee's earning capacity" that the statute allows as evidence that the employee's earnings would have been expected to increase.

2. The WCAC properly adjusted the amount of the wage increase allowed under § 356(1) after finding that the magistrate's decision to award the maximum rate increase allowed by the statute was not supported by the evidence. The statute allows an increase "up to" fifty percent of the state average weekly wage for the year in which the employee's injury occurred, and the trier of fact has discretion to set the amount of the rate increase at or below that maximum amount.

3. The plaintiff's argument that the magistrate erred in failing to award more nursing or attendant-care benefits than it did is not appropriate for review because the argument is beyond the scope of the statement of questions presented in the plaintiff's appellate brief.

4. The argument by Southfield Bowl and Central National Insurance Company with regard to the applicability of the one-year-back rule of § 381(3) was properly raised and preserved for review. Their argument regarding the two-year-back rule, MCL 418.381(2); MSA 17.237(381)(2), was waived for appellate review because they did not raise that issue on appeal in the WCAC after raising it during the proceedings before the magistrate.

5. The WCAC erred in concluding that, because the plaintiff was injured before the effective date of the statute, the one-year-back rule of § 381(3) has no application. However, the error was harmless in this case because the WCAC reversed the award of the nursing or attendant-care benefits for all services provided on or after the effective date of the statute. Where, as here, the petition for such benefits is filed after the effective date of the statute, the one-year-back rule applies regardless of the employee's underlying injury date, but only with respect to those services that are provided after the effective date of the statute.

6. The WCAC did not err in reversing the open award of nursing or attendant-care benefits beginning August 27, 1990, on the basis that the award, for meal preparation services alone, was for an ordinary household task beyond the scope of reimbursable nursing or

attendant-care benefits because such a task is also required for the maintenance of persons who are not disabled. The nature of the service provided, not the status or devotion of the provider of the service, is relevant in determining whether a given service constitutes reimbursable nursing or attendant care.

Affirmed.

1. WORKER'S COMPENSATION — WAGE-LOSS BENEFITS — INCREASE AFTER TWO YEARS — INCREASED EARNING CAPACITY.

The Worker's Disability Compensation Act provides for a one-time increase in weekly wage-loss benefits after two years of continuous compensable disability, up to fifty percent of the state average weekly wage applicable to the employee's date of injury, for employees whose benefit rate is less than fifty percent of the applicable state average weekly wage for the injury date, based upon proof that because of the employee's earning capacity the employee's earnings would have been expected to increase if the employee had not become disabled; evidence of a higher gross weekly amount earned by a replacement employee for performing the injured employee's former job constitutes evidence of increased wages paid for work that is within the injured employee's preinjury earning capacity and constitutes proof of the kind of increased earnings the employee would have been expected to receive by virtue of the employee's own earning capacity if not for the onset of the work-related disability, even if the higher amount paid to the replacement employee is attributable solely to adjustments for inflation, cost of living increases, or changes in the labor market (MCL 418.356[1]; MSA 17.237[356][1]).

2. WORKER'S COMPENSATION — APPELLATE REVIEW — PRESERVING QUESTION.

Appellate review of an argument concerning application of the two-year-back rule in MCL 418.381(2); MSA 17.237(381)(2) asserted in proceedings before a worker's compensation magistrate is waived if the argument is not raised on appeal in the Worker's Compensation Appellate Commission.

3. WORKER'S COMPENSATION — NURSING OR ATTENDANT-CARE BENEFITS — ONE-YEAR-BACK RULE.

Where an injured employee's petition for nursing or attendant-care benefits is filed after the effective date of the one-year-back rule provided in § 381(3) of the Worker's Disability Compensation Act, the one-year-back rule applies even if the employee's underlying injury date was before the effective date of the statute but only with respect to those services that were provided on or after the effective date of the statute (MCL 418.381[3]; MSA 17.237[381][3]).

4. Worker's Compensation — Nursing or Attendant-Care Benefits.

   Ordinary household tasks, including housecleaning and the prepara-
   tion of meals, are beyond the scope of reimbursable nursing or
   attendant-care benefits under the Worker's Disability Compensation
   Act because such activities are also required for the maintenance
   of persons who are not disabled; it is the nature of the service pro-
   vided, not the status or devotion of the provider of the service, that
   is relevant to the determination whether a given service constitutes
   reimbursable nursing or attendant care (MCL 418.315; MSA
   17.237[315]).

*Sachs, Waldman, O'Hare, Helveston, Hodges &
Barnes, P.C.* (by *Granner S. Ries*), for Phyllis A.
Matney.

*Parsons & Bouwkamp, P.C.* (by *Stephen C.
Bouwkamp*), for Southfield Bowl and Central
National Insurance Company.

*Frank J. Kelley*, Attorney General, *Thomas L.
Casey*, Solicitor General, and *Roderick T. MacGillis*,
Assistant Attorney General, for the Second Injury
Fund.

Before: NEFF, P.J., and FITZGERALD and C. A. NELSON,*
JJ.

PER CURIAM. In these consolidated appeals, plaintiff,
Phyllis Matney, and defendants, Southfield Bowl and
Central National Insurance Company (hereinafter
Southfield Bowl) and the Second Injury Fund, appeal
by leave granted from a decision of the Worker's
Compensation Appellate Commission. The WCAC
affirmed with modification a hearing magistrate's
award of an increase in plaintiff's weekly wage-loss
benefits after two years of continuous disability, pur-
suant to MCL 418.356(1); MSA 17.237(356)(1), and an

---

* Circuit judge, sitting on the Court of Appeals by assignment.

award of benefits under MCL 418.315; MSA 17.237(315) for certain nursing or attendant care performed by plaintiff's daughter. We affirm.

Plaintiff worked as an unskilled janitor at Southfield Bowl's bowling alley for approximately three years beginning in 1981. Her work duties involved typical janitorial tasks, such as cleaning bathrooms and waxing or mopping floors. Other than working as a nurse's aide for approximately one year fifteen years earlier, plaintiff's prior work history was limited to performing similar janitorial work in other bowling alleys. She has an eighth grade education. Apparently, she has not worked anywhere since injuring her knees in a slip and fall accident at Southfield Bowl on September 11, 1984, despite undergoing knee surgery in March 1985.

After plaintiff's knee injury in 1984, Southfield Bowl voluntarily paid plaintiff weekly wage-loss benefits based upon plaintiff's average weekly wage of $150 with no fringe benefits. Plaintiff first sought benefits for certain nursing or attendant-care services performed by her adult daughter, Sandra Halstead, over five years later, in an application for hearing filed in May 1990. Plaintiff later added a claim for a weekly wage-loss benefit rate increase pursuant to § 356(1) in an amended application filed in March 1991.

Section 356(1) provides for a one-time increase in weekly wage-loss benefits after two years of continuous compensable disability, up to fifty percent of the state average weekly wage applicable to the employee's date of injury, for employees whose benefit rate is less than fifty percent of the applicable state average weekly wage for that injury date, based upon proof that because of the employee's earning capacity

the employee's earnings would have been expected to increase if the employee had not become disabled:

> An injured employee who, at the time of the personal injury, is entitled to a rate of compensation less than 50% of the then applicable state average weekly wage as determined for the year in which the injury occurred pursuant to section 355, may be entitled to an increase in benefits after 2 years of continuous disability. After 2 years of continuous disability, the employee may petition for a hearing at which the employee may present evidence, that by virtue of the employee's age, education, training, experience, or other documented evidence which would fairly reflect the employee's earning capacity, the employee's earnings would have been expected to increase. Upon presentation of this evidence, a worker's compensation magistrate may order an adjustment of the compensation rate up to 50% of the state average weekly wage for the year in which the employee's injury occurred. The adjustment of compensation, if ordered, shall be effective as of the date of the employee's petition for the hearing. The adjustments provided in this subsection shall be paid by the carrier on a weekly basis. However, the carrier and the self-insurers' security fund shall be entitled to reimbursement for these payments from the second injury fund created in section 501. There shall be only 1 adjustment made for an employee under this subsection.

The Second Injury Fund was brought into the case on the basis of its reimbursement liability under § 356(1).

Evidence regarding plaintiff's earning capacity and expected earnings increase was essentially limited to testimony regarding the weekly wages that had been earned by replacement employees who took over plaintiff's janitorial work at Southfield Bowl after her injury. Specifically, the testimony indicated that plaintiff's former position remained unfilled until Septem-

ber 1986, when another employee was hired to perform the work for $180 a week without fringe benefits. Thereafter, a succession of other employees held plaintiff's former job, including, for a time, plaintiff's daughter Sandra, and these other employees earned $200 a week, again without fringe benefits.

With regard to plaintiff's claim for nursing or attendant-care benefits, plaintiff and her daughter Sandra testified that Sandra had provided several types of convalescent care services for plaintiff from the time plaintiff was injured in September 1984, through plaintiff's 1985 knee surgery and postsurgery recuperation period, and continuing through the time of the hearing in the summer in 1991. Specifically, they testified that Sandra, who was already a member of plaintiff's seven-member household, did virtually all plaintiff's shopping, errands, transportation, cooking, cleaning, and other household chores, because plaintiff was and is unable to perform those tasks for herself. Before plaintiff's 1985 knee surgery and for approximately one year thereafter, Sandra allegedly also assisted her mother with taking baths, going to the bathroom, changing bandages, and attendance at regularly scheduled physical therapy sessions. Throughout much of the time Sandra was providing the alleged services in question, she also held full-time employment of her own. She apparently received no payment from plaintiff for her services until approximately one week before testifying in this case, when plaintiff allegedly gave her $5,000 in cash for a down payment on a house.

The hearing magistrate granted plaintiff the maximum weekly wage-loss benefit rate increase allowable under § 356(1), i.e., fifty percent of the $370.65

state average weekly wage applicable in 1984 or $185.33 a week. In this regard, the magistrate opined that the testimony showing that replacement employees were paid up to $200 a week to perform plaintiff's former job in the years after her injury constituted "other documented evidence" of plaintiff's earning capacity for purposes of establishing an expected increase in earnings within the meaning of § 356(1). The magistrate also rejected the notion that the statute requires injured workers to prove that they would have risen to a higher job level or that the effects of inflation and cost of living increases must be subtracted when determining a worker's increased earning capacity for purposes of the statute.

Regarding plaintiff's nursing or attendant-care claims, the magistrate refused to apply retroactively the one-year-back rule of MCL 418.381(3); MSA 17.237(381)(3), which was enacted in 1985, to plaintiff's claims based upon a September 11, 1984, injury date. However, the magistrate did not grant plaintiff all the nursing or attendant-care benefits she had requested. Rather, the magistrate allowed reimbursement of only fourteen hours of care a week, at minimum wage, for a closed one-year period commencing on the date of plaintiff's knee surgery in March 1985, based upon testimony by plaintiff and her daughter indicating that services such as bathing, bathroom care, bandage changing, and transportation to physical therapy lasted for only approximately one year. Additionally, the magistrate also awarded a second, open award of nursing or attendant-care benefits for only seven hours a week, apparently for preparation of plaintiff's meals only, commencing on August 27, 1990, the date from which, according to plaintiff's

medical expert witness, there was a progressive deterioration in plaintiff's condition and self-care capacity. The magistrate apparently concluded that the remaining services allegedly provided by plaintiff's daughter were either noncompensable ordinary household tasks or were not reasonable and necessary at the time provided.

On appeal, the WCAC affirmed the magistrate's decision to award plaintiff a benefit rate increase pursuant to § 356(1) based upon the evidence showing that replacement employees were paid as much as $200 a week for performing plaintiff's former job, but the WCAC found that the magistrate's decision to award plaintiff the maximum rate increase allowable under the statute was unsupported by the evidence, because there was no evidence to show that plaintiff's earnings would have been expected to increase beyond the $200 gross weekly amount earned by replacement employees. In this regard, the WCAC apparently reasoned that in order to justify a maximum increase in an employee's benefit rate to fifty percent of the applicable state average weekly wage, it must be shown that the employee would have been expected to earn a gross weekly wage sufficient to establish a weekly benefit rate at or above fifty percent of the applicable state average weekly wage when that gross weekly wage amount is used to calculate the employee's after-tax average weekly wage and resulting weekly benefit rate pursuant to MCL 418.313; MSA 17.237(313). Accordingly, the WCAC modified the magistrate's award by reducing plaintiff's increased weekly benefit rate from $185.33 to $132.

Regarding the magistrate's nursing or attendant-care awards, the WCAC affirmed the closed, one-year

award between March 1985 and March 1986, agreeing with the magistrate that the one-year-back rule of § 381(3) has prospective application only and therefore does not apply to plaintiff's claims based upon a 1984 work injury. However, the WCAC reversed the magistrate's open award of benefits beginning August 27, 1990, opining that the magistrate improperly awarded benefits for the performance of ordinary household tasks, including the preparation of meals, that are not compensable as nursing or attendant-care according to *Kushay v Sexton Dairy Co*, 394 Mich 69; 228 NW2d 205 (1975).

This Court's review in worker's compensation cases is limited to questions of law. Findings of fact made or adopted by the WCAC are conclusive on appeal, absent fraud, if there is any competent evidence in the record to support them, but a decision of the WCAC is subject to reversal if the WCAC operated within the wrong legal framework or its decision was based on erroneous legal reasoning. MCL 418.861a(14); MSA 17.237(861a)(14); *Michales v Morton Salt Co*, 450 Mich 479, 484-485; 538 NW2d 11 (1995); *Illes v Jones Transfer Co (On Remand)*, 213 Mich App 44, 50; 539 NW2d 382 (1995).

On appeal, all the parties challenge the WCAC's decision regarding plaintiff's claim for a rate increase under § 356(1). Southfield Bowl and the Second Injury Fund contend that plaintiff failed to present any evidence that her own individual earning capacity was likely to cause her earnings to increase in the manner necessary for a rate increase under the statute. They argue that the WCAC committed legal error in allowing a rate increase under the statute solely on the basis of changes in the base salary for plaintiff's

former janitor's job in the years after her injury, in effect basing plaintiff's increase upon mere cost of living increases and adjustments for inflation rather than any actual career advancement potential plaintiff may have had. In contrast, plaintiff argues that she was entitled to a rate increase under the statute and that the WCAC committed legal error in reducing the amount of her rate increase to $132 a week because the statute mandates that the employee's weekly benefit rate be increased to fifty percent of the applicable state average weekly wage.

We reject defendants' challenge to the sufficiency of the evidence of replacement employee earnings as support for a benefit rate increase under § 356(1). Even if the higher gross weekly amount the replacement employees were able to earn for performing plaintiff's former job is attributable solely to adjustments for inflation, cost of living increases, or changes in the labor market, it still constitutes evidence of increased wages paid for work that is within plaintiff's preinjury earning capacity, and thus constitutes proof of the kind of increased earnings plaintiff would have been expected to receive by virtue of her own earning capacity if not for the onset of her work-related disability. The statute does not limit evidence of an injured employee's capacity for increased earnings to the particulars of the employee's age, education, training, or experience; it also permits "other documented evidence which would fairly reflect the employee's earning capacity." As observed by the hearing magistrate, nothing in the statutory language necessarily requires proof that the worker would have actually risen to a higher job level, nor does the statutory language appear necessarily to preclude reliance

upon changes in the base salary for the employee's former job, even if attributable to mere inflation, cost of living, or seniority adjustments. We decline to read such additional requirements or restrictions into the statute, especially in light of the fact that the statute is remedial and should be interpreted in a liberal and humanitarian manner in favor of the employee. E.g., *Doom v Brunswick Corp*, 211 Mich App 189, 197; 535 NW2d 244 (1995).

We also find no merit in plaintiff's challenge to the WCAC's adjustment of the amount of wage increase allowed under § 356(1) in this case. While it is true that the statute allows only one rate increase, the statute's use of the phrase "up to" fifty percent of the state average weekly wage plainly indicates that the trier of fact has discretion to set the amount of rate increase at or below that maximum amount. Cf. *People v Farah*, 214 Mich App 156, 157; 542 NW2d 321 (1995). Plaintiff offers no specific argument challenging the WCAC's method of computing the lesser benefit rate increase in this case, except to assert that the WCAC's methodology is not stated in sufficient detail to determine exactly how it arrived at the $132 a week figure. While the WCAC's opinion does not provide the details of its calculation, we believe it is fairly obvious that the methodology employed by the WCAC was based upon a determination that plaintiff's weekly benefit rate should be based upon the $200 increased gross weekly wage and that the $200 gross wage was used to calculate the $132 weekly benefit in accordance with § 313. Absent any specific allegations of error directed at that methodology, we decline to pass upon its propriety.

With regard to plaintiff's award of nursing or attendant-care benefits, plaintiff argues that the WCAC erred as a matter of law in reversing the magistrate's open award of nursing or attendant-care benefits beginning August 27, 1990, on the basis that the services in question were "ordinary household tasks" that are not reimbursable under *Kushay, supra.* Plaintiff also argues that the hearing magistrate also erred in failing to award more nursing or attendant-care benefits than the magistrate did, but we find those additional arguments inappropriate for our review because they are beyond the scope of the statement of questions presented in plaintiff's appeal brief, which challenges only the WCAC's reversal of some of the benefits that were awarded by the magistrate, not the WCAC's failure to reverse the magistrate's denial of some other benefits. E.g., *Hammack v Lutheran Social Services,* 211 Mich App 1, 7; 535 NW2d 215 (1995).

Southfield Bowl argues that the WCAC erred in failing to reverse the magistrate's awards of nursing or attendant-care benefits in this case in their entirety, pursuant to the one-year-back rule of § 381(3) and the two-year-back rule of § 381(2). Although Southfield Bowl's one-year-back rule argument was properly raised and preserved for judicial review below, Southfield Bowl's two-year-back rule argument has been waived for appellate review because of the defendants' failure to raise that issue on appeal in the WCAC. See MCL 418.861a(11); MSA 17.237(861a)(11); *Weems v Chrysler Corp,* 201 Mich App 309, 316-317; 505 NW2d 905 (1993), aff'd in part on this ground 448 Mich 679, 686, n 5; 533 NW2d 287 (1995). We find Southfield Bowl's reliance upon *Howard v General*

*Motors Corp*, 427 Mich 358; 399 NW2d 10 (1986), misplaced in this regard. In fact, a majority of the justices in *Howard* actually agreed that the two-year-back rule may be waived by failing to challenge on administrative appeal the hearing official's failure to apply the rule. See *id.* at 387, 390. While the Court in *Howard* recognized that there may be no basis for waiver if the defendant had inadequate notice and opportunity to assert the two-year-back rule defense below, that obviously is not the case here, because Southfield Bowl did in fact assert the two-year-back rule in defense of plaintiff's claims during the proceedings before the hearing magistrate.

We agree with Southfield Bowl that the WCAC was incorrect in concluding that the one-year-back rule of § 381(3) has no application to plaintiff because plaintiff was injured before the July 30, 1985, effective date of the statute. However, we find the error to be harmless in this case, given the fact that the WCAC has reversed the award of the nursing or attendant-care benefits for all services provided on or after the July 30, 1985, effective date of the statute. Where, as here, the petition for nursing or attendant-care benefits was filed after the 1985 effective date of the statute, the one-year-back rule applies regardless of the employee's underlying injury date, but only with respect to those services that were provided on or after the July 30, 1985, effective date of the statute. *Sokolek v General Motors Corp (On Remand)*, 206 Mich App 31; 520 NW2d 668 (1994), aff'd 450 Mich 133; 538 NW2d 369 (1995). Here, all the nursing or attendant-care benefits upheld by the WCAC were for services provided before the effective date of the stat-

ute, so Southfield Bowl's reliance upon the one-year-back rule is unavailing in this case.

Finally, we also reject plaintiff's challenge to the WCAC's reversal of the magistrate's limited open award of nursing or attendant-care benefits beginning August 27, 1990, which apparently was based upon meal preparation services alone. As noted by the WCAC, ordinary household tasks, including housecleaning and the preparation of meals, are beyond the scope of reimbursable nursing or attendant-care benefits, because such activities are also "required for the maintenance of persons who are not disabled." *Kushay, supra* at 74. We are unpersuaded by plaintiff's argument that the rule in *Kushay* should be limited to cases where such services are performed by the claimant's spouse rather than by some other family member or third party such as a child or parent of the injured employee. To the contrary, the Court in *Kushay* expressly indicated that the provider's status as a "conscientious spouse" is irrelevant to the determination whether a given service constitutes reimbursable nursing or attendant care. It is the "nature of the service provided, not the status or devotion of the provider of the service" that is relevant. Id.

Affirmed.