WILMERS v GATEWAY TRANSPORTATION COMPANY (ON REMAND)

Docket No. 194264. Submitted February 18, 1997, at Detroit. Decided January 16, 1998, at 9:05 A.M. Leave to appeal denied, 457 Mich ___.

Ronald R. Wilmers, who was rendered a paraplegic with only limited use of his right arm as a result of a work-related automobile accident, sought the replacement of a specially equipped van that, after his accident, was provided to him by his employer's insurer as a medical expense benefit under § 315(1) of the Worker's Disability Compensation Act, MCL 418.315(1); MSA 17.237(315)(1). A worker's compensation magistrate, relying on a decision of the Worker's Compensation Appellate Commission that held that a van does not constitute an "appliance" under § 315(1), found that the employer, Gateway Transportation Company, and its successor insurer, Michigan Property & Casualty Guaranty Association, were not required to provide the plaintiff with a van, but were required to provide the special equipment and vehicle modifications necessary to accommodate his physical handicap. The WCAC affirmed that portion of the magistrate's decision. The Court of Appeals denied the plaintiff leave to appeal in an unpublished order, entered May 25, 1995 (Docket No. 181602). The Supreme Court, in lieu of granting leave to appeal, remanded the matter to the Court of Appeals for consideration as on leave granted. 451 Mich 863 (1996). The parties did not appeal with regard to additional issues decided by the WCAC concerning an additional defendant, the Second Injury Fund.

On remand, the Court of Appeals held:

1. The clear purpose of § 315(1) is to provide the injured employee with such services and products as are reasonably necessary to cure or relieve the effects of injury. Here, the plaintiff's evidence indicated that one of the effects of his injury was a loss of mobility, including an inability to use an ordinary car, or even a specially equipped one, for transportation. Under the circumstances of this case, where a combination of the plaintiff's work-related injuries and his height (6' 7") result in his inability to get in and out of a car, a specially equipped van that the plaintiff requires for transportation, and not just its special modification, may be considered a reasonably necessary "appliance" for purposes of § 315(1). Under the circumstances of this case, and given the kind

of substantial vehicle modifications that this plaintiff requires, the entire vehicle may here be considered an "appliance" covered by § 315(1), even though it is not actually necessary to rebuild the entire vehicle to accommodate the handicap.

2. The plaintiff's need for a specially equipped van, not merely its special equipment, is related to his work injury. Even if most or all of the plaintiff's travel in the van is strictly personal in nature and unrelated to treatment for his injuries, his need for the van remains work-related for purposes of § 315(1).

3. The part of the order of the WCAC that denied the plaintiff the full cost of a replacement van under § 315(1) must be reversed and the matter must be remanded for an order granting the plaintiff the full cost of the replacement van and its special modifications.

Reversed in part and remanded.

YOUNG, P.J., dissenting, stated that a van is not an "appliance" within the meaning of § 315(1). The Legislature's selection of the phrase "other appliances" in § 315(1) that was preceded by specific examples of artificial adaptive aids (such as crutches, hearing aids, dentures, and eyeglasses), creates an unambiguous legislative intent to mandate that an employer is obligated only to supply devices of like kind. A van is not properly considered to be like a crutch, hearing aid, false teeth, or eyeglasses. The WCAC's reasonable interpretation of § 315(1) should be affirmed.

WORKER'S COMPENSATION — APPLIANCES — SPECIALLY EQUIPPED VEHICLES.

A specially equipped vehicle, as opposed to merely its special modifications, may constitute a compensable appliance under § 315(1) of the Worker's Disability Compensation Act where the need for the vehicle, not merely its special equipment, is related to the employee's work injury (MCL 418.315[1]; MSA 17.237[315][1]).

*Daryl Royal*, for the plaintiff.

*Lacey & Jones* (by *Michael T. Reinholm*), for Gateway Transportation Company and Michigan Property & Casualty Guaranty Association.

ON REMAND

Before: YOUNG, P.J., and GRIBBS and S. J. LATREILLE*, JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

GRIBBS, J. Plaintiff appeals from a November 18, 1994, order of the Worker's Compensation Appellate Commission, which held that plaintiff's employer is not required to purchase a new specially equipped van to accommodate plaintiff's work-related injuries. This Court previously denied plaintiff's application for leave to appeal in an unpublished order, entered May 25, 1995 (Docket No. 181602), but our Supreme Court, in lieu of granting leave to appeal, has remanded the matter to this Court for consideration as on leave granted. 451 Mich 863 (1996). We reverse.

Plaintiff was injured in an automobile accident on February 15, 1977, while in the course of his employment as a traveling traffic representative for defendant Gateway Transportation Company. His injuries were severe, resulting in paraplegia with only limited use of his right arm. For the most part, plaintiff's claim of work-related disability was not disputed in this case and worker's compensation benefits were voluntarily paid.[1]

Initially, plaintiff's benefits were paid by Gateway's previous worker's compensation insurer, Carriers Insurance Company. In addition to other benefits, Carriers provided plaintiff with a van that had been modified with special equipment to accommodate his injuries, such as a lift for his wheelchair, hand controls, power seats, and automatic doors. Apparently, Carriers provided the van to plaintiff as a medical expense benefit under § 315(1) of the Worker's Disa-

---

[1] The proceedings below involved a number of disputes concerning such matters as whether plaintiff is totally and permanently disabled and the calculation of basic and differential benefits, but for purposes of this appeal, we are concerned only with plaintiff's claim for a specially equipped van.

bility Compensation Act, MCL 418.315(1);   MSA
17.237(315)(1),   which provides, in pertinent part:

> The employer shall furnish, or cause to be furnished, to
> an employee who receives a personal injury arising out of
> and in the course of employment, reasonable medical, sur-
> gical, and hospital services and medicines, or other attend-
> ance or treatment recognized by the laws of this state as
> legal, when they are needed. . . . The employer shall also
> supply to the injured employee dental service, crutches,
> artificial limbs, eyes, teeth, eyeglasses, hearing apparatus,
> and other appliances *necessary to cure, so far as reasona-
> bly possible, and relieve from the effects of the injury.* If
> the employer fails, neglects, or refuses so to do, the
> employee shall be reimbursed for the reasonable expense
> paid by the employee, or payment may be made in behalf of
> the employee to persons to whom the unpaid expenses may
> be owing, by order of the worker's compensation magis-
> trate. [Emphasis added.]

Plaintiff provided gas and maintenance for the van
at his own expense. When Carriers later went bank-
rupt, defendant Michigan Property & Casualty Guar-
anty Association assumed liability as Gateway's
worker's compensation insurer.

After using the specially equipped van for a number
of years, plaintiff asked Michigan Property & Casualty
Guaranty Association to furnish him with a new van
to replace the previously provided one, but his
request was denied. At the hearing before a worker's
compensation magistrate, plaintiff testified that the
van needed to be replaced because its mileage was
getting quite high and it was beginning to require both
minor and major repairs more frequently. Plaintiff
also presented expert testimony from his treating
physician who opined that because of a combination
of plaintiff's work-related injuries and his somewhat

unusual height (6' 7"), plaintiff is unable to get in and out of a car, even a specially equipped one, and therefore use of a van is medically required.

Relying on an earlier decision,[2] where the WCAC held that a van modified for handicap use does not constitute an "appliance" under § 315(1), the magistrate found that Gateway is not required to provide plaintiff with the van itself, but only the special equipment and vehicle modifications necessary to accommodate his physical handicap[3]. The magistrate ruled:

> Plaintiff has asked for either the replacement of or substantial mechanical repairs be made to his van. Apparently, the original insurance company provided this van to him. Based upon *Blake v General Motors Corporation*, 1991 WACO No 98, 4 MI WCLR 1072 (1991), I will not order defendants to provide plaintiff with a van. However, I will require defendants to pay for any modifications which must be made to a van or automobile which plaintiff may purchase which are required as a result of plaintiff's paraplegia and size. (Plaintiff testified that he is six feet seven inches tall, and therefore requires modification to the ceiling of his van because of his height).

On appeal, the WCAC adopted and affirmed this portion of the magistrate's decision, rejecting plaintiff's attempt to distinguish the *Blake* case on the basis of the fact that a specially equipped van is the only

---

[2] *Blake v General Motors Corp*, 1991 Mich ACO 98.

[3] The magistrate also ruled that defendant Second Injury Fund may not take a credit for the van as a substitute for the company-provided car plaintiff previously received through his employment, which is one of the discontinued fringe benefits used in determining the amount of plaintiff's average weekly wage at Gateway. That issue is not before us in this appeal, because there is no cross appeal from the WCAC's affirmance of the magistrate's decision in this regard.

method of transportation plaintiff can use because of his unique injuries and size:

> Plaintiff's argument essentially turns on the magistrate's interpretation of the word "reasonable," and asserts that *Blake v General Motors Corp,* 1991 ACO #98, relied upon by the magistrate, is distinguishable. We disagree. In order for us to reverse the magistrate on this issue, we would be obliged to characterize the entire vehicle as an appliance. We would be stretching the statute beyond the clear legislative intent if we did so. Granted, plaintiff presents some unique characteristics to be dealt with; he has a severe handicap and he is of unusual (but not extraordinary) height. We are not convinced, however, that the entire van would have to be rebuilt to accommodate these characteristics. We believe that the rationale in *Blake* is correct, and affirm the magistrate on this issue.

A decision of the WCAC is subject to reversal for legal error, such as when the WCAC bases its findings on a misconception of law or fails to correctly apply the law. *Jones-Jennings v Hutzel Hosp (On Remand),* 223 Mich App 94, 105; 565 NW2d 680 (1997). Statutory interpretation is a question of law, and while this Court ordinarily accords deference to the construction placed upon statutory provisions by the administrative agency charged with enforcement of those provisions, that principle does not control where the agency interpretation is clearly wrong. *Id.*

In this case we are presented with the question whether a specially equipped vehicle may constitute an "appliance" within the meaning of § 315(1) of the Worker's Disability Compensation Act, or more particularly, whether the entire vehicle itself, as opposed to merely its special modifications, may constitute a compensable "appliance." This issue is a question of law. See *Kushay v Sexton Dairy Co,* 394 Mich 69, 71-

72; 228 NW2d 205 (1975). While this Court has never addressed this issue in the worker's compensation context, we previously have held that the full cost of a specially equipped van may constitute an allowable expense for "reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation" within the meaning of § 3107(a) the no-fault act, MCL 500.3107(a); MSA 24.13107(a). *Davis v Citizens Ins Co*, 195 Mich App 323; 489 NW2d 214 (1992). We find no reason to employ a more restrictive interpretation to § 315(1) in the worker's compensation context.

The Worker's Disability Compensation Act is remedial legislation that should be interpreted liberally in a humanitarian manner in favor of the injured employee. *Wells v Firestone Tire & Rubber Co*, 421 Mich 641, 651; 364 NW2d 670 (1984); *Matney v Southfield Bowl*, 218 Mich App 475, 486; 554 NW2d 356 (1996). Literal constructions that produce unreasonable or unjust results that are inconsistent with the purpose of the act should be avoided. *Rowell v Security Steel Processing Co*, 445 Mich 347, 354; 518 NW2d 409 (1994). Like the provision of the no-fault act interpreted in *Davis, supra*, the clear purpose of § 315(1) is to provide the injured employee with such services and products as are reasonably necessary to cure or relieve the effects of injury. Here, plaintiff's evidence (which was never rejected by the magistrate or the WCAC) indicated that one of the effects of his injury is a loss of mobility, including an inability to use an ordinary car, or even a specially equipped one, for transportation. We conclude that under these circumstances the entire specially equipped van that plaintiff requires for transportation, and not just its

special modifications, may be considered a reasonably necessary "appliance" for purposes of § 315(1).

Our conclusion is supported by the decisions of courts in several other states that have held that specially equipped vans for paraplegics may constitute, in their entirety, a compensable "appliance" or "apparatus" under worker's compensation statutes similar to § 315(1). *Terry Grantham Co v Industrial Comm,* 154 Ariz 180; 741 P2d 313 (Ariz App, 1987); *Aino's Custom Slip Covers v DeLucia,* 533 So 2d 862 (Fla App, 1988); *Edgewood Boys' Ranch Foundation v Robinson,* 451 So 2d 532 (Fla App, 1984); *Manpower Temporary Services v Sioson,* 529 NW2d 259 (Iowa, 1995); *Mississippi Transportation Comm v Dewease,* 691 So 2d 1007 (Miss, 1997). We find the following passage from the Iowa Supreme Court's decision in *Manpower Temporary Services* particularly instructive:

> We begin with the unusually strong medical evidence of necessity and of the record that [the injured employee's] family status and past lifestyle reveal no other use for the van. That evidence refutes any contention that the van is a frill or luxury and reveals what can be described as an appliance, not greatly different from crutches or a wheelchair. The point is that a van is necessary in order to make [the injured employee's] wheelchair fully useful.
>
> In another context, like other courts, we have agreed with the dictionary definition that describes the term "appliance" as "a means to an end." *Murray v Royal Indem Co,* 247 Iowa 1299, 1301, 78 NW2d 786, 787 (1956). The "end" of the van is merely an extension of [the injured employee's] 300-pound wheelchair. Without a van she is, more than need be, a prisoner of her severe paralysis. The [factfinder] could thus reasonably view the van as an appliance, a necessary part of [the injured employee's] care. [529 NW2d 264.]

We acknowledge that there are decisions from courts in some other states that deny worker's compensation coverage for specially equipped cars and vans on the ground that such vehicles simply do not constitute a medical apparatus or device,[4] and decisions from courts in still other states that allow reimbursement only for the cost of the special vehicle modifications or allow the employer to offset the cost of the vehicle before modification with the cost of an average, midpriced car of the same year.[5] However, we are persuaded that, under the circumstances of this case, and given the kind of substantial vehicle modifications that this plaintiff requires, the entire vehicle may here be considered an "appliance" covered by § 315(1), even though it is not actually necessary to rebuild the entire vehicle to accommodate the handicap.[6] The WCAC's interpretation of the term "appliance" is unduly restrictive and contrary to the principle of interpreting the Worker's Disability Compensation Act in a liberal and humanitarian manner so as to effectuate the remedial goal of relieving injured workers from the effects of injury.

We reject defendants' contention that plaintiff is seeking "something he would need whether he had ever been injured at work or not." While it is possible

---

[4] *R & T Constr Co v Judge*, 323 Md 514; 594 A2d 99 (1991); *In re Kranis v Trunz, Inc*, 91 AD2d 765; 458 NYS2d 10 (1982).

[5] *McDonald v Brunswick Electric Membership Corp*, 77 NC App 753; 336 SE2d 407 (1985); *Meyer v North Dakota Workers Compensation Bureau*, 512 NW2d 680 (ND, 1994); *Crouch v West Virginia Workers' Compensation Comm'r*, 184 W Va 730; 403 SE2d 747 (1991). See also *Strickland v Bowater, Inc*, 322 SC App 471; 472 SE2d 635 (1996).

[6] We would not, however, require the full cost of the modified vehicle to be included under § 315(1) in cases where less substantial modifications are involved. See *Temps & Co Services v Cremeens*, 597 So 2d 394 (Fla App, 1992).

that plaintiff might have procured a new car or even a van for himself had he not been injured, it is not certain that he necessarily would have needed to do so. Presumably, as an uninjured person, plaintiff would have had several options to using a motor vehicle of his own for his transportation needs, such as using ordinary public transportation, carpooling, bicycling, and so forth. However, because of his work-related injuries, he is no longer able to use most of those alternative means of transport. For that reason, plaintiff's need for a specially equipped van, not merely its special equipment, is related to his work injury. Cf. *Davis, supra* at 327-328. Even if most or all of plaintiff's travel in the van is strictly personal in nature and unrelated to treatment for his injuries, his need for the van remains work-related for purposes of § 315(1).

The order of the WCAC is reversed in part, to the extent it denies plaintiff the full cost of a replacement van under § 315(1), and this case is remanded to the WCAC for entry of an order granting plaintiff the full cost of the replacement van, not merely its special modifications. We do not retain jurisdiction.

S. J. LATREILLE, J., concurred.

YOUNG, P.J. (*dissenting*). Because I believe that the Worker's Compensation Appellate Commission correctly decided plaintiff's underlying claim, I would affirm. Accordingly, I respectfully dissent.

### FACTUAL AND PROCEDURAL BACKGROUND

On February 15, 1977, while in the course of his employment, plaintiff was injured in an automobile accident. Plaintiff, for reasons not explained in the

record, was initially supplied with a specially equipped van by defendant Gateway Transportation Company's then worker's compensation insurance carrier. That insurance carrier later became bankrupt, and defendant Gateway Transportation has since ceased doing business. Defendant Michigan Property & Casualty Guarantee Association assumed responsibility for Gateway's previous worker's compensation insurance carrier's liabilities.

Eventually, plaintiff requested that the original van he was supplied be replaced because of its high mileage and its increasing cost of maintenance. Plaintiff's request was denied by Michigan Property & Casualty. At the worker's compensation proceeding that followed as a result of the refusal to accede to plaintiff's request for a new van, plaintiff presented testimony that, because of the nature of his continuing work-related disability and his height (6' 7"), he was unable to get in and out of a car, even a specially equipped one. Consequently, it was suggested that a van was medically required.

At issue in the worker's compensation proceeding was the construction of § 315(1) of the Worker's Disability Compensation Act, MCL 418.315(1); MSA 17.237(315)(1). Section 315(1) provides in relevant part:

> The employer shall also supply to the injured employee dental service, crutches, artificial limbs, eyes, teeth, eyeglasses, hearing apparatus, *and other appliances* necessary to cure, so far as reasonably possible, and relieve from the effects of the injury. [Emphasis added.]

The magistrate, relying on the WCAC's prior interpretation of § 315(1),[1] held that Michigan Property & Casualty was not required to buy a van, but was obligated to pay for any special adaptive equipment and the costs of modifying a vehicle supplied by plaintiff. Plaintiff appealed the magistrate's decision and the WCAC affirmed. In affirming the decision of the magistrate, the WCAC stated:

> In order for us to reverse the magistrate on this issue, we would be obligated to characterize the entire vehicle as an appliance. We would be stretching the statute beyond the clear legislative intent if we did so.

This Court initially denied plaintiff's application for leave to appeal in an unpublished order, entered May 25, 1995 (Docket No. 181602). However, the Supreme Court, in lieu of granting leave to appeal, remanded the case for consideration as on leave granted. 451 Mich 863 (1996).

### ANALYSIS

Simply put, the merit of plaintiff's claim for a new van, as opposed to compensation for the modifications made to a vehicle supplied by him, turns upon the construction of the term "other appliances" found in § 315(1). Although previously interpreted by the WCAC, this statute has never been judicially construed by this Court. Consequently, the resolution of plaintiff's claim involves a pure question of law.

Judicial review of worker's compensation appeals is generally limited to questions of law; reviewing courts may not reweigh evidence, and the findings of

---

[1] *Blake v General Motors Corp*, 1991 Mich ACO 98.

fact made by or adopted by the WCAC are conclusive on appeal if there is any competent evidence in the record to support them. *Holden v Ford Motor Co*, 439 Mich 257, 263; 484 NW2d 227 (1992). Although this Court reviews questions of law de novo, *Cardinal Mooney High School v Michigan High School Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991), we generally accord deference to an administrative tribunal's reasonable construction of the statute it administers. *Breuhan v Plymouth-Canton Community Schools*, 425 Mich 278, 282-283; 389 NW2d 85 (1986).

The fundamental rule of statutory construction is to give meaning to the Legislature's intent in enacting a provision. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 212; 501 NW2d 76 (1993). The Legislature is presumed to have intended the meaning it plainly expressed. *Frasier v Model Coverall Service, Inc*, 182 Mich App 741, 744; 453 NW2d 301 (1990). If the statutory language at issue is clear and unambiguous, judicial interpretation is unnecessary and precluded. *Lorencz v Ford Motor Co*, 439 Mich 370, 376; 483 NW2d 844 (1992). This Court must enforce a clear and unambiguous statute as written. *Snyder v General Safety Corp (On Remand)*, 200 Mich App 332, 334; 504 NW2d 31 (1993).

I believe that the WCAC's construction of the worker's compensation act is both reasonable and consistent with the plain meaning of the language the Legislature chose when it enacted § 315. An "appliance" is generally defined as an "instrument, apparatus, or device for a particular purpose." *The Random House Dictionary of the English Language: Unabridged Edition* (1973), p 73. I am unpersuaded that a van (or other vehicle) falls within the ambit of the

kind of articles one would normally consider to be "appliances."

This construction of appliance is buttressed by the remaining language of § 315(1), because the term "other appliances" is preceded by an iteration of no fewer than seven other illustrative examples of medical devices or artificial aids designed to enhance an injured employee's ability to overcome the effects of disability. I conclude that the Legislature's selection of the phrase "other appliances," when preceded by specific examples of artificial adaptive aids (such as crutches, hearing aids, dentures, glasses, etc.), creates an unambiguous legislative intent to mandate that an employer is obligated only to supply devices of *like* kind. In giving construction to statutes, words are to be taken " ' "in the sense in which they are understood in common language . . . ." ' " *Romano v South Range Constr Co*, 8 Mich App 533, 538; 154 NW2d 560 (1967) (citations omitted). Consequently, I find it hard to reconcile with my construction of the statute the majority's view that a van is considered to be "like" such adaptive aids as a crutch, a hearing aid, false teeth, or a pair of eyeglasses. While I believe that the majority has reached its conclusions in good faith, I believe that its construction of this statute ranges too far afield from the common understanding of the language employed by the Legislature. I scarcely believe it conceivable that the Legislature, given the language it used in this statute, embraced the majority's expansive interpretation of the language in question.

In reaching the conclusion that a van is not an appliance within the meaning of § 315(1), I am mindful of the majority's admonition that the worker's

compensation act, being remedial in nature, must be broadly construed. However, such a proposition cannot be utilized as judicial license to interpret statutes in a manner foreign to their plain terms. See *Dillon v Secretary of State*, 61 Mich App 588, 591; 233 NW2d 96 (1975). In any event, the most direct response to this proposition is that the worker's compensation act, being in derogation of the common law, must be literally construed. *Paschke v Retool Industries*, 445 Mich 502, 510-511; 519 NW2d 441 (1994). As stated, the Legislature has provided a compelling basis for defining and therefore construing the term "other appliances" by supplying seven examples of the kind of prosthetic and adaptive appliances it had in mind. Consequently, the legislative goal of relieving the effects of an injury must be read in conjunction with the kind of illustrative devices the Legislature specifically chose to include in the statute.

The majority has taken obvious pains to focus upon and limit its opinion to the unique characteristics of the plaintiff and his work-related disability. However, I find this to be a particularly unsuitable basis either for statutory construction in general or for determining the Legislature's intent concerning the statute involved in this case.[2] The majority opinion also gives particular emphasis to the portion of the statute that requires employers to supply appliances "necessary to cure, so far as reasonably possible, and relieve from

---

[2] Given that the majority has placed such a primary focus on plaintiff's claimed needs, it is appropriate to note that plaintiff is receiving an approximate annual $4,250 car allowance as part of his worker's compensation benefits. One may, as a consequence, question why the majority has chosen *plaintiff's* case to abrogate the WCAC's entirely sensible interpretation of this statute and, in effect, require that plaintiff be compensated twice for his transportation needs.

the effects of the injury" as its basis for construing the term "other appliances" expansively. The majority effectively defines the term "appliance" as any device that will serve to ameliorate the effects of a work-related injury.[3] If it were actually the Legislature's intent to require the provision of *any* device that would cure the injury as much as possible without regard to the nature of the device, one would have expected the Legislature to have done so explicitly by eliminating all the exemplar appliances it included to define the term "other appliances."

My criticism of the majority's construction is best illustrated by one of plaintiff's claims that was rejected below but has not been appealed. Plaintiff requested below that Michigan Property & Casualty install an in-ground swimming pool on his property because a pool would provide him a therapeutic means of exercise. This claim was properly denied below. A claim for a swimming pool must be rejected under my reading of § 315 because an in-ground pool is not and cannot be considered an "appliance" within the meaning of the statute. However, I believe that the majority's construction of the statute would require (or at least would not preclude) a contrary result because the majority concludes that the statute requires the provision of "products as are reasonably necessary to cure or relieve the effects of injury." *Ante* at 345. Thus, plaintiff's request for the installation of an in-ground pool would have merit under

---

[3] This is presumably why the majority emphasizes plaintiff's unique characteristics as a rationale for its determination that a van is an "appliance." The fact that plaintiff's characteristics play so large a role in the majority's construction of this statute is a leading indicator of the majority's nontextual approach to determining the Legislature' intent.

§ 315 to the extent that a pool would provide relief for plaintiff's injury.[4]

Despite its attempt to provide some limitation on its construction of this statute, the majority's construction admits of no real or determinate basis for deciding in future cases what may be properly characterized as an appliance. Moreover, the majority essentially concedes that the rule it adopts has not been accepted by a majority of jurisdictions. Having undertaken to expand the scope of the statute beyond the meaning I believe that its language will bear, the majority owes not only an explanation regarding how far its construction will take us but what factors must be considered in determining whether a particular requested device is an appliance or something more than an appliance. The majority clearly has not done so.

Finally, the majority rests its construction of § 315(1) on *Davis v Citizens Ins Co*, 195 Mich App 323, 327; 489 NW2d 214 (1992), a case which it acknowledges does not arise under the worker's compensation act, but rather under § 3107(a) of the no-fault act, MCL 500.3107(a); MSA 24.13107(a). The

---

[4] Indeed, although not raised as an issue in this appeal, plaintiff also requested that defendant pay for a tractor to be used as transportation on his property. The magistrate explained:

> Plaintiff has apparently purchased a farm tractor or alternative vehicle in order to get around his 18 acre homestead. Plaintiff has requested that defendant pay for this vehicle since it is the only means by which he can reach the outer portions of his property.

The magistrate declined to order full reimbursement, instead requiring Michigan Property & Casualty to pay for any necessary modifications. However, once the majority's opinion is issued, and plaintiff again requests Michigan Property & Casualty to purchase a specially modified tractor for him, I cannot determine how it would be then possible under the majority's construction of § 315(1) to deny that request.

no-fault act requires, as a reimbursable personal injury protection (PIP) expense, reasonable charges for "reasonably necessary *products*" as well as services and accommodations. See MCL 500.3107(a); MSA 24.13107(a) (emphasis added).

However, there are at least three fundamental problems with the majority's reliance upon *Davis*. First, the no-fault act contains no listing of illustrative "products" that provide a limitation on the potential meaning of that term. Consequently, the no-fault act markedly and materially differs from § 315(1), wherein the Legislature attempted to define by example the term "other appliances." Second, the duty under the no-fault act to supply "reasonably necessary products," MCL 500.3107(a); MSA 24.13107(a), is considerably more expansive than the obligation under § 315(1) of the worker's compensation act to provide "other appliances." A van might well be a *product*; I do not believe that a van can easily be deemed an *appliance*, particularly in light of the examples of prosthetic and adaptive devices the Legislature chose to illustrate the kind of appliances an employer is obligated to provide under the worker's compensation act. Third, despite what I consider to be material differences between the two statutes, even if, arguendo, I concluded that these differences were not material, I do not find *Davis* to be *persuasive* authority in this case. *Davis* is an exceedingly spare opinion. Other than quoting the no-fault statute, *Davis* contains almost no textual analysis of the no-fault language at issue. *Davis* merely affirms the trial court's award as a reimbursable PIP expense the full costs of a modified van purchased by the plaintiff after the insurer refused to buy the vehicle. Nowhere

is it apparent that the parties raised on appeal, and the *Davis* opinion surely does not purport to address, the question whether reimbursable PIP expenses should encompass the van *and* its modifications, or whether they should be apportioned to include only the modifications made to the van to accommodate the disabilities of the insured.

Because I believe that the WCAC gave a reasonable interpretation of the worker's compensation act and because that interpretation is not only reasonable, but comports with the plain meaning of the terms the Legislature chose in establishing the contours of an employer's obligation to furnish rehabilitative aids to injured employees, I would affirm the decision of the WCAC.