■ In the Matter of the Claim of KENNETH LANGFORD, Respondent, v WILLIAM ROGERS, INC., Respondent, and WESTCHESTER FIRE INSURANCE COMPANY, Appellant. WORKERS' COMPENSATION BOARD, Respondent.—Mercure, J. Appeal from a decision of the Workers' Compensation Board, filed April 3, 1987.

On January 22, 1972, claimant became a paraplegic when a work-related accident caused irreversible damage to his spinal cord. Claimant has been determined by the Workers' Compensation Board to be permanently, totally disabled. From 1972 to 1975, claimant resided in a Veteran's Administration Hospital. Thereafter, he moved to Florida, where he lived in a wheelchair-accessible apartment complex. Westchester Fire Insurance Company (hereinafter the carrier) supplied or paid for special equipment, furnishings and alterations that enabled claimant to adapt the apartment to his disability. He eventually left Florida, claiming that the cost of living there exceeded his income. Claimant returned to New Jersey where he planned to sell a house he owned to raise capital to return

to Florida, but the best offer that he received, $42,000, was $10,000 below his minimum asking price. In 1983, claimant took up permanent residence in his New Jersey home.

The Board granted claimant's April 1980 application to reopen his case to determine the "carrier's liability for having claimant's home made wheelchair accessible". Claimant's home is a small chalet-type structure which was built into a steep hillside, with a vertical elevation about 30 feet above the nearest road. A narrow 130-foot-long dirt driveway runs up from the road to a point approximately 50 feet from the front of the house. From the terminus of the driveway, access to the house is gained by means of a pathway, described as a winding "goat path", difficult for even an able-bodied person to climb, and steep stairs to the front porch.

Barrett Kolton, president of General Mobility Company, which modifies homes to serve the physically handicapped, testified as to the necessary modifications to claimant's house. He explained that the driveway would have to be widened, graded and paved and some sort of enclosed lift would be necessary to get claimant from the end of the driveway to the front porch. He suggested rearranging some walls inside the house, creating a larger bedroom and providing more barrier-free space in the bathroom. Kolton stated that the proposal to modify claimant's house was the most difficult of the 40 or 50 he had done and that the cost of the modifications would be in a range between $40,000 and $60,000. Loring Baker of Rehab Modifications conducted an on-site evaluation of claimant's home to determine the feasibility of making it wheelchair-accessible. He noted that even if the modifications were made, the house would still be functionally deficient and unsafe. He summarized his conclusions by stating that any attempt to renovate this house would be an "exercise in futility and a very expensive one at that".

A Workers' Compensation Law Judge directed the carrier to pay up to $30,000 for the modifications to claimant's home. The Board found that the modifications were medically necessary within the contemplation of Workers' Compensation Law § 13 (a), removed the $30,000 spending cap and provided that payments be made in the form of a mortgage loan. The carrier appeals.

The Board contends that Workers' Compensation Law § 13 (a) empowers it to order structural modifications to an inaccessible house and that its determination is supported by substantial evidence. Workers' Compensation Law § 13 (a) pro-

vides in pertinent part: "The employer shall be liable for the payment of the expenses of medical, surgical, optometric or *other attendance or treatment,* nurse and hospital service, medicine, optometric services, crutches, eyeglasses, false teeth, artificial eyes, orthotics, functional assistive and adaptive devices and apparatus, as well as artificial members of the body or other devices or appliances necessary in the first instance to replace, support or relieve a portion or part of the body" (emphasis supplied).

Turning first to the issue of statutory interpretation, we reject the carrier's argument that Workers' Compensation Law § 13 (a) provides no authority for modifying claimant's house. Although, as asserted by the carrier, it has long been settled that a motor vehicle is not a medical apparatus or device within the scope of section 13 (a) *(see, Matter of Nallan v Motion Picture Studio Mechanics Union,* 49 AD2d 365, *revd on other grounds* 40 NY2d 1042; *Matter of Carniato v Wheeler Corp.,* 7 AD2d 328), it does not necessarily follow that modifications to claimant's house are not within the scope of the statute. In our view, there is authority in the phrase "other attendance or treatment" for reasonable modifications needed to facilitate the use of a wheelchair *(see, Matter of Smith v Tompkins County Courthouse,* 60 NY2d 939; *Matter of Zylbergleit v Irving Rubber & Metal Co.,* 87 AD2d 929; *Derebery v Pitt County Fire Marshall,* 318 NC 192, 347 SE2d 814 [the employer's obligation to furnish "other treatment or care" included duty to furnish wheelchair-accessible housing]; *Squeo v Comfort Control Corp.,* 99 NJ 588, 494 A2d 313 [the employer's obligation to furnish "other treatment necessary to cure and relieve" included duty to construct self-contained apartment attached to the home of the injured person's parents]). If a wheelchair is necessary, then it logically follows that modifications needed to facilitate the use of the appliance must also be considered a necessity. However, any such modifications must be reasonable under all of the circumstances *(see, supra; Pine Bluff Parks & Recreation v Porter,* 6 Ark App 154, 639 SW2d 363).

In our view, the Board's factual determination is not supported by substantial evidence in several respects. Initially, both experts expressed substantial reservations about these modifications, with Baker stating that even if the modifications were made, the house would be neither safe nor functional. Kolton conceded that he could not render an opinion as to the technical feasibility of the modifications in the absence of additional engineering studies and surveying, which were

never completed. Thus, there was no evidence before the Board that the project was technically feasible. Moreover, only one of the three doctors who submitted a report actually saw the house, and it was his opinion that the house should be sold as soon as possible and that it was completely unrealistic to consider adapting it for accessible housing. Finally, alternative housing was not explored at all and there is no evidence in the record as to whether there are alternative, better and more appropriate facilities near claimant's house.

Although the issue of reasonableness is ordinarily a question of fact for the Board (see, Matter of Maurer v Terminal Serv. Co., 46 AD2d 709), where, as here, the record is devoid of evidence which would support a finding of reasonableness, this court has not hesitated to determine the issue as a matter of law (see, Matter of Zayas [Ross]), 57 AD2d 40; Matter of Zanotti v New York Tel. Co., 48 AD2d 192). Here, we conclude that since alternative housing was not explored, the cost of the modifications may exceed the value of the house and the property will be both functionally deficient and unsafe after the completion of the work, the modifications are unreasonable as a matter of law.

Decision reversed, with costs against the Workers' Compensation Board, and matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this court's decision. Mahoney, P. J., Casey, Weiss, Levine and Mercure, JJ., concur.