Henry MEYER, Appellant,

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU,**
Appellee,

v.

**KOST BROTHERS, INC., Respondent.**

Civ. No. 930205.

Supreme Court of North Dakota.

Feb. 23, 1994.

Patrick J. Maddock and Randall S. Hanson of McElroy, Camrud, Maddock & Olson, Grand Forks, for appellant.

Ken R. Sorenson, Asst. Atty. Gen., Bismarck, for appellee.

SANDSTROM, Justice.

Henry Meyer, a permanently injured worker, appeals from a district court judgment affirming the decision of the workers compensation bureau: (1) suspending his benefits for half of the total third-party settlement amount paid to Henry and his wife, Jane Meyer, for Jane's loss of consortium claim; and, (2) denying reimbursement for the total cost of a handicap accessible van.

We reverse the district court and hold: (1) the bureau's right of subrogation does not extend to amounts paid to a wife for loss of consortium; and, (2) the injured worker is entitled to reimbursement for the difference between the cost of a handicap accessible van and the cost of a vehicle he would have otherwise owned.

## I

Henry J. Meyer was a truck driver for Kost Brothers in Wahpeton, North Dakota. On August 17, 1988, the double-axle tandem truck he was driving went out of control when a front tire lost its re-cap. The tire allegedly had been negligently retread by Fargo Tire. The work-related accident left Henry paralyzed from the chest down and permanently confined to a wheelchair.

At the time of the accident, Henry was married to Jane Meyer. The Meyers have three children. After the accident, Jane quit her job at the local hospital and nursing home to provide home-care services for Henry. She performed home-care services for 2½ years before the parties separated.

Henry Meyer filed an application for workers compensation benefits on August 24, 1988. The North Dakota Workers Compensation Bureau accepted responsibility on the claim and paid disability and medical benefits. The Meyers also sued Fargo Tire for damages incurred by both Henry and Jane. The complaint consisted of claims by Henry for personal injury, pain and suffering, and lost earnings, and by Jane for loss of consortium and emotional and mental suffering.

After the lawsuit began, but prior to the time of settlement, Henry and Jane entered into a marital termination agreement. As part of the agreement, Jane was to receive 10 percent of any settlement or judgment from Fargo Tire, after all costs, fees, and reimbursements had been paid, not to exceed $60,000. Fargo Tire paid Henry and Jane $900,000 as a release of all claims against it. From the $900,000 settlement, the bureau was immediately reimbursed for the amount of benefits it had expended up to the date of settlement. After costs and attorney's fees were paid, the remaining funds were distributed to Henry and Jane according to their agreement.

The bureau notified Henry it intended to suspend his future benefits based on the total settlement amount. Henry requested the bureau reduce his suspended benefits by the amount of the settlement awarded to Jane. The bureau denied Henry's request. Henry requested a rehearing. The administrative hearing officer affirmed the bureau's order. The district court, on appeal, upheld the bureau.

## II

In an appeal from a judgment of the district court involving the decision of an administrative agency, we review the decision of the agency and not the decision of the district court. *Skjefte v. Job Service North Dakota*, 392 N.W.2d 815 (N.D.1986). Under N.D.C.C. § 28–32–19, we review administrative decisions to determine: (1) if the findings of fact are supported by a preponderance of the evidence; (2) if the conclusions of law are sustained by the findings of fact; and, (3) if the decision is supported by the conclusions of law. *Skjefte* at 817. Administrative agency decisions on questions of law are fully reviewable by this Court. *Blueshield v. Job Service North Dakota*, 392 N.W.2d 70, 73 (N.D.1986); *Walter v. North Dakota State Highway Commissioner*, 391 N.W.2d 155, 159 (N.D.1986).

### III

N.D.C.C. § 65–01–09 provides, in part:

"When an injury or death for which compensation is payable under provisions of this title shall have been sustained under circumstances creating in some person other than the fund a legal liability to pay damages in respect thereto, the injured employee, or the employee's dependents may claim compensation under this title and proceed at law to recover damages against such other person. *The fund is subrogated to the rights of the injured employee or the employee's dependents to the extent of fifty percent of the damages recovered up to a maximum of the total amount it has paid or would otherwise pay in the future in compensation and benefits for the injured employee.* The bureau's subrogation interest may not be reduced by settlement, compromise, or judgment. The action against such other person may be brought by the injured employee, or the employee's dependents in the event of the employee's death.... If the action is brought by the injured employee or the employee's dependents, or the employer as provided above, the bureau shall pay fifty percent of the costs of the action, exclusive of attorney fee, when such costs are incurred.... When there is recovery of damages in the action, the costs of the action, exclusive of attorneys fees, must be prorated and adjusted on the percentage of the total subrogation interest of the bureau recovered to the total recovery in the action." (Emphasis added.)

The bureau contends, under § 65–01–09, its right to subrogation extends to both the rights of the injured employee and the rights of the employee's dependents. The bureau's interpretation of § 65–01–09 is flawed. Section 65–01–09 only grants the bureau subrogation to the rights of the injured employee, or alternatively, in cases where the employee dies, to the rights of the employee's dependents, up to the amount the bureau has paid or would otherwise pay in compensation and benefits for the injured employee. Subrogation is "a legal operation by which a third person who pays a creditor

succeeds to his rights against the debtor as if he were his assignee." *Ness v. St. Aloisius Hospital,* 313 N.W.2d 781, 782 (N.D.1981). Because the bureau only paid benefits based on Henry's injuries, not the related injuries of Jane, the bureau cannot succeed to Jane's rights, and is limited to amounts recovered by Henry.

Citing *Wald v. City of Grafton,* 442 N.W.2d 910 (N.D.1989), the bureau contends because workers compensation benefits enriched the Meyers' marital partnership, Jane Meyer's rights are merged with her husbands. The bureau misapplies our holding in *Wald.* In *Wald,* this Court said the workers compensation statute provided the exclusive remedy against an *employer* for a wife's loss of consortium damages from her husband's work-related physical injuries. *Wald* at 911; *see Schreder v. Cities Service Co.,* 336 N.W.2d 641 (N.D.1983); N.D.C.C. § 65–05–06. This Court's decision in *Wald* was based on the theory that under the workers compensation statute, the spouse of an injured worker forfeited an independent cause of action for loss of consortium against the employer in return for sure and certain relief by the injured worker. *Wald* at 911.

"In recent times, this Court has viewed marriage as an economic partnership, with both spouses' contributions to the marital enterprise entitling them to share in the marital assets as partners upon the dissolution of the partnership. So too, when one spouse is injured during the course of employment and thus entitled to workers compensation benefits, those benefits inure to the benefit of the economic partnership of husband and wife. In return for those benefits, all remedies of both partners, other than workers compensation benefits are sacrificed, including the claim for lost consortium. While we may question the sufficiency of the awards provided under workers compensation, we should not overlook the benefits of the protection to injured workers and their spouses from the expense, uncertainty and delays of litigation that would be entailed in all cases, absent workers compensation, and the specter of defeat in those cases where there was failure to establish negligence against an employer or co-employee or

where the injured employee was contributorily negligent."

*Wald* at 913 (Levine, J., concurring specially) (citations omitted).

█ Unlike *Wald*, this case does not involve the exclusive remedy provision of N.D.C.C. § 65–05–06. In suits against a liable third party, an injured employee, and the employee's spouse, are not guaranteed sure and certain relief, and therefore, the rationale for merging a spouse's claim does not exist.

In support of its position, the bureau cites several cases from other states. We have reviewed those cases, and are convinced they do not support the bureau's position. *See Martinez v. Industrial Com'n of Arizona*, 168 Ariz. 307, 812 P.2d 1125, 1129 (App.1991) (insurance carrier's subrogation lien attaches to entire third-party recovery, however, insurance carrier only entitled to offset the wife's consortium recovery if the wife claims or receives death benefits); *Page v. Hibbard*, 142 Ill.App.3d 788, 96 Ill.Dec. 914, 491 N.E.2d 1374 (4 Dist.1986), *Rev'd*, 119 Ill.2d 41, 115 Ill.Dec. 544, 547, 518 N.E.2d 69, 72 (1987) (spouse's claim for loss of consortium is an independent action to recover for the spouse's injuries, and not a derivative claim).

Finally, the bureau cites *Dearing v. Perry*, 499 N.E.2d 268 (Ind.App. 1 Dist.1986). In *Dearing*, the court held that although loss of consortium is a derivative action, it is still separate and independent from the primary action, and any amounts allocated to loss of consortium are not subject to the insurance carrier's lien. *Dearing* at 272. The Indiana court, however, allowed the insurance carrier a lien on the recovery of both the injured worker and her spouse because the couple had attempted to defeat the insurance carrier's right of subrogation by allocating a substantial portion of the total recovery to the spouse's consortium claim.

"We hold that a husband and wife and a third-party cannot negotiate a settlement in which the employer's insurer is not a party whereby a substantial portion of the total amount is allocated to loss of consortium. If we were to allow this, the statutory lien provision would be completely evaded. The same would result if we were to allow a husband and wife to execute an agreement among themselves as how to allocate a lump sum settlement fund such as the Dearings attempted to do. In either of these situations the arbitrary allocation should be given no effect. Only where the issue is fully and fairly tried before an impartial fact finder or where the insurance carrier is invited to participate in settlement negotiations will such an allocation be given legal effect as to portions subject to the carrier's lien."

*Dearing* at 272.

█ As the *Dearing* court held, injured workers cannot shield settlement amounts from the bureau's right of subrogation by arbitrarily allocating amounts to the employee's spouse. To prevent arbitrary apportionment, the bureau should be notified prior to settlement so it can participate in any apportionment of settlement funds between the injured employee and the employee's spouse. Failure to notify the bureau prior to settlement, however, does not automatically invalidate amounts apportioned to a spouse's loss of consortium claim. The inquiry is whether the apportionment is reasonable in light of the specific circumstances. Only amounts which are reasonably related to a spouse's injuries may be protected from the bureau's right of subrogation.

In this case, the bureau does not dispute the reasonableness of the allocation to consortium. The bureau, therefore, is not entitled to offset Henry's benefits for amounts paid to Jane for her injuries.

IV

Henry purchased a 1991 Ford E150 Van. The van has special equipment for his ambulatory needs and a luxury conversion package. Henry contends the bureau should reimburse him for the total cost of the van.

At the administrative hearing, Henry testified it is impractical and hazardous for him to use a standard vehicle without adaptive equipment. He also testified the adaptive equipment is not available for use with a regular vehicle. The bureau presented no evidence at the hearing. The hearing officer determined Henry is entitled to reimburse-

ment for the cost of the handicap adaptive equipment mounted on the van, but not for the cost of the van itself. In his findings of fact, conclusion of law, and order, the hearing officer found:

> "A motor vehicle is not a medical, surgical, or hospital service, nor is it an artificial member, replacement, or apparatus. The Bureau is not liable for the purchase of a motor vehicle, but only for any necessary adaptive equipment."

The hearing officer found the total cost of the van was $26,275, itemized as follows:

1) Van and factory equipment    $15,995
2) Adaptive equipment           $ 5,580
3) Luxury conversion            $ 4,700.

Although Henry did not challenge the hearing officer's cost computations, the district court found the computations amounted to obvious error which should be corrected to give Henry full reimbursement for the cost of the adaptive equipment. The district court found the total cost of the van was $27,720, itemized as follows:

1) Van and factory equipment    $16,510
2) Adaptive equipment           $ 6,615
3) Luxury conversion            $ 4,595.

Henry received a demonstrator discount of $2,000, reducing the total purchase price to $25,720. The district court prorated the discount and concluded Henry is entitled to $6,137.73 as reimbursement for the adaptive equipment. On appeal to this Court, the bureau does not challenge the district court's computations, and therefore, we accept them as correct.

The bureau's responsibility to provide rehabilitation services is set out in N.D.C.C. § 65–05–07, which provides in part:

> "Immediately after an injury sustained by an employee and during the resulting period of disability, the fund shall furnish to the employee such reasonable and appropriate medical, surgical, and hospital service and supplies as the nature of the injury may require. The fund may furnish such artificial members and replacements as in the judgment of the bureau may be necessary to rehabilitate such injured employee."

N.D.C.C. § 65–01–02(2) defines "artificial replacements" as "mechanical aids including braces, belts, casts, or crutches as may be reasonable and necessary due to compensable injury."

The hearing officer found the van's adaptive equipment was reasonably necessary for Henry's rehabilitation. The adaptive equipment is an "artificial replacement" under the statute. The hearing officer, however, incorrectly computed the cost associated with using the equipment. If as part of his rehabilitation and return to employment, Henry must use adaptive equipment, and if the adaptive equipment can only be used with a van, then the bureau is responsible for the cost of the adaptive equipment and the necessary additional vehicle cost associated with purchasing a van.

■ The bureau is not responsible for purchasing a vehicle for Henry. If Henry had not been injured he would still have needed to own a vehicle. The bureau, however, is responsible for the added expense associated with buying a van compared with a regular automobile. henry is responsible for the van's luxury conversion, and for an amount equivalent to the cost of an average vehicle, which he might have otherwise owned, of the same year as the van. The bureau is responsible for the adaptive equipment and the extra expense associated with purchasing the van. *See Crouch v. W. Va. Workers' Comp. Com'r,* 184 W.Va. 730, 403 S.E.2d 747 (1991) (bureau held liable for difference between cost of handicapped equipped van and the cost of an average, mid-priced automobile, of the same year). *See also Terry Grantham Co. v. Industrial Com'n,* 154 Ariz. 180, 741 P.2d 313 (App.1987) (van required to restore mobility is "other apparatus" under worker compensation statute); *Fidelity and Casualty Co. v. Cooper,* 382 So.2d 1331 (Fla.App. 1980) (van is included in statutory requirement of "remedial treatment").

The judgment of the district court, and the bureau's decision are reversed. This case is remanded to the bureau for further proceedings consistent with this opinion.

VANDE WALLE, C.J., and NEUMANN, LEVINE, and MESCHKE, JJ., concur.