**Ross D. MICKEY, Appellant,**

v.

**CITY WIDE MAINTENANCE,**
**Respondent.**

No. WD 56185.

Missouri Court of Appeals,
Western District.

July 27, 1999.

Steven Carl Effertz, Independence, for appellant.

Thomas D. Billam, Kansas City, for respondent.

Before: Presiding Judge ELLIS, Chief Judge BRECKENRIDGE and Judge LOWENSTEIN.

HAROLD L. LOWENSTEIN, Judge.

This appeal is taken from a final award made by the Labor and Industrial Relations Commission, which affirmed the decision of the Administrative Law Judge denying the worker's compensation claim of Appellant Mickey. Mickey, who is permanently and totally disabled, requested a modified van to accommodate his wheelchair.

The facts of this case are not in dispute. On September 20, 1995, Appellant Ross Mickey fell more than 75 feet from the AT & T building in Kansas City. Mickey worked as a window washer for City Wide Maintenance and was working in that capacity at the time of the accident. As a result of the fall, Mickey suffered a burst fracture of his spine, which caused complete paralysis from the waist down, leaving him confined to a wheelchair. The parties have stipulated to Mickey's permanent and total disability.

In November 1997, a hearing was held concerning Mickey's motion to modify the award seeking as medical treatment from the employer a modified van to accommodate his wheelchair. The issue of the modified van was the sole issue presented to the administrative law judge. The only witnesses at the hearing were Mickey and his medical expert, Dr. James Stuckmeyer. Mickey demonstrated and testified as to how he got into, and out of, a vehicle. Maneuvering himself in and out of the vehicle takes four rotational steps. The first step involves transferring his body from the wheelchair to the seat of the car. He must first look to see that there is no oncoming traffic, so that he can get in position and open the car door. He uses the steering wheel as leverage to pull himself inside the car and then turns to his left and pulls the seat cover out of the wheelchair, then places it behind the passenger seat. Steps two and three involve rotating his body back towards the wheelchair again and pulling off the wheels, one at a time, then rotating back to his right to place each one in the seat behind him. After taking off the first wheel, and placing it in the vehicle, he must then maneuver the wheelchair around to remove the second wheel. The fourth rotational move involves actually lifting the wheelchair off the ground and bringing it into the vehicle. Lifting the 30 pound wheelchair into the car requires him to "grab ahold of the wheelchair" and in one movement, "physically throw [his] body kind of and put it behind" him, using his back and arms at the same time.

Mickey told of the difficulty of, and problems with, maneuvering himself and the wheelchair in and out of the vehicle. Once he was on an incline when attempting this, and the door kept shutting while he was trying to get in the seat, and the wheelchair took off without him. It rolled down the street before crashing at the bottom of the hill. Mickey had to chase it down with the car. Often, he also has trouble actually pulling the wheelchair into the vehicle. Sometimes, it unfolds while he is pulling it in, and stabs him in the neck or the chest; other times, it has caught on the hand control lever and revved up the engine. Most importantly, Mickey testified regarding the pain he experiences when using his back to pull the wheelchair into the car. He stated there are "a particular couple of muscles in my back which are, if they are triggered,...it activates the muscle all the way up between my shoulder blades. It tightens all of them up all at one time and...freezes me up and I really, I can't move after that."

Dr. Stuckmeyer testified that Mickey continues to have back pain and that his

complaints "with persistent low back pain and spasm" can be attributed, at least in part, to his picking up the wheelchair "from a mechanical disadvantage and put[ting] it into a vehicle." Dr. Stuckmeyer testified that, "Picking up a 30 some odd pound wheelchair and transferring it into the back of a vehicle is difficult," in addition to "[g]etting in and out of the doors on inclines with the door kind of slamming shut when you're trying to work it." A modified van is "not only for convenience..., but also...it's a safety factor," and "it also decreases the repetitive stress to the lower back and upper torso." Dr. Stuckmeyer also testified that Mickey is currently having back problems due to the rotational stresses of picking up the wheelchair. He said, "[p]hysically, [Mickey] is capable of doing it, it's just [that] doing it is causing him difficulty." The doctor further testified that the back problem will most likely worsen with age, and that spinal cord patients typically "tend to gain weight with time," which will cause more difficulty. He stated that Mickey's ability to load the wheelchair into the vehicle "will probably just deteriorate with time, with age, and with weight gain," causing him more pain. The doctor also testified that the repetitive stress could damage the rods and other hardware in Mickey's back, just as a hanger can be broken by bending it back and forth numerous times. The doctor recommended a modified van "to make his life easier and decrease his back pain and back spasm."

Presently, Mickey has good upper body strength. This is solely attributable to Mickey's hard work. As the employer and insurer's counsel pointed out, Mickey has "maintained excellent body weight and muscular control of the upper body" because he has been doing "physical muscular work-out exercises for his upper body" on a regular basis, since recovering from surgery. Although he now lives in Columbia, Mickey used his wheelchair as his sole means of transportation, while living in Kansas City. He currently borrows his girlfriend's car to get around in and testified that, "Ever since I have been driving, I've had more of a lifestyle that's different than when I was...in Kansas City without a vehicle. It's just like being a normal guy." Mickey's claim is for a van modified to accommodate a wheelchair lift.

## STANDARD OF REVIEW

■ Where there is no dispute as to the facts, review is simply: 1) whether, as a matter of law Missouri's Workers' Compensation chapter covers, as "medical treatment," alterations to a van to make it wheelchair compatible; and 2) whether such accommodations to prevent potential future problems associated with a paraplegic claimant attempting to manually maneuver a wheelchair in and out of his van were medically necessary and presently compensable. Section 287.495, RSMo Cum.Supp.1998, sets forth the standard of review. Review is under *Davis v. Research Medical Center*, 903 S.W.2d 557, 571 (Mo.App.1995), which requires a two-step process designed to ascertain whether the Industrial Commission could have reasonably made the findings and award based on the evidence before it. In the first step, the appellate court looks at the whole record, viewing the evidence and all favorable inferences in a light most favorable to the final award to determine if there was sufficient, competent and substantial evidence to support the award. Where there is competent and substantial evidence supporting the award, the second step involves viewing the evidence in a light most favorable to the award, but the court "must consider all evidence in the record including that which opposes or is unfavorable to. the award, take account of the overall effect of all the evidence, and determine whether the award is against the overwhelming weight of the evidence." *Id.* Where the award is clearly based on the application of the law, rather than a determination of the facts, the court has independent review and may correct the award when the application of law is erroneous.

## PURPOSE OF LAW

■ The purpose of the compensation law, since its adoption by the legislature in 1925, is to make industry bear the burden of compensating employees for injuries arising out of, and in the scope and course of their employment, and is to be broadly and liberally construed and interpreted to extend benefits to the largest possible class and any doubt as to the right of compensation is to be resolved in favor of the employee. *Bass v. National Super Markets, Inc.*, 911 S.W.2d 617, 619 (Mo. banc 1995); *West v. Posten Construction Co.*, 804 S.W.2d 743, 746 (Mo. banc 1991); *Gaston v. J.H. Ware Trucking, Inc.*, 849 S.W.2d 70, 75 (Mo.App.1993). "The very object and purpose of the entire act is that substantial rights are to be enforced," *Wiele v. National Super Markets, Inc.*, 948 S.W.2d 142, 146 (Mo.App.1997), and the act "should be liberally construed as to effectuate its purpose and humane design." *Rogers v. Pacesetter Corp.*, 972 S.W.2d 540, 542 (Mo.App.1998). The following language taken from this court's opinion in*Betz v. Columbia Telephone Co.*, 224 Mo.App. 1004, 24 S.W.2d 224, 228 (1930) is apropos: "Different sections of a statute bearing on the same subject must be harmonized, if possible...Apparently conflicting provisions must be reconciled, if possible, with the general legislative purpose...It is a useful and safe rule of construction to resolve any ambiguity or obscurity in a statute in favor of such reading as will best meet the demands of natural justice, so far as that can be done without violence to settled legal principles." (Citations omitted).

## ISSUE

The issue of law presented here is as follows: Where an employee is rendered a paraplegic due to a compensable injury, do modifications to a van to accommodate the loading and unloading of a wheelchair qualify as medical treatment under Section 287.140, RSMo 1988 Cum.Supp., requiring they be provided by the employer and insurer?

## STATUTORY LAW–MEDICAL

Section 287.140.1, RSMo, requires the employer to provide medical treatment as a component of an employee's compensation due to injury. *Mathia v. Contract Freighters, Inc.*, 929 S.W.2d 271, 277 (Mo. App.1996). The pertinent portion of the statute reads, "[I]n addition to all other compensation, the employee shall receive and the employer shall provide such medical, surgical, chiropractic, and hospital treatment, including nursing, custodial, ambulance and medicines, as may reasonably be required after the injury or disability, to cure and relieve from the effects of the injury." Subsection .1 goes on to state that the employer may be required to pay mileage for the employee for medical exams to be performed up to two hundred fifty miles each way from the place of treatment. Section 287.140.2 states that if the requirements of subsection .1 are being furnished in such a manner as to endanger the life, health, or recovery of the employee, the division or commission, "may order a change in the physician, surgeon, hospital or other requirement." Section 287.140.8 states the employer may be required "to furnish an injured employee with artificial legs, arms, hands, surgical orthopedic joints, eyes, or braces, as needed for life whenever the division or commission shall find that the injured employee may be partially or wholly relieved of the effects of a permanent injury by use thereof."

Strictly speaking, under the quoted portion of Section 287.140, there is no stated requirement that mechanical renovation of a van for a person who has lost use of his legs in a compensable injury must be borne as a medical or compensable expense by the employer-insurer. The respondent cites to *Lutman v. American Shoe Mach. Co.*, 151 S.W.2d 701, 709 (Mo.App.1941)(overruled on other grounds, *Wentz v. Price Candy Co.*, 352 Mo. 1, 175 S.W.2d 852, 856 (1943)), for the proposition

that the statutory language on medical treatment should not be expanded to include medical examination or necessarily medical advice. The court held that the words "medical, surgical, and hospital treatment" were not of a peculiar or technical nature, requiring that they be given their plain or ordinary meaning, which shows a plain legislative intent to include treatment, but not diagnosis nor advice given by a layman, and which are not subject to expansion. *Id.* at 709.

## FUTURE MEDICAL

■ Where future medical benefits are to be awarded, the medical care must of necessity flow from the accident, via evidence of a "medical causal relationship" between the injury from the condition and the compensable injury, before the employer is to be held responsible. *Modlin v. Sun Mark, Inc.*, 699 S.W.2d 5, 7 (Mo. App.1985). It is not necessary for a claimant seeking future medical benefits to produce conclusive evidence to support the claim, but the employee need only show a need for additional medical treatment by reason of the compensable accident as a reasonable probability. A mere possibility of a need for future medical care does not constitute substantial evidence to support an award, but if a medical expert testifies as to there being a reasonable probability (founded on reason and experience which inclines the mind to believe but leaves room for doubt) for the treatment, then it may be ordered. *Mathia v. Contract Freighters, Inc.*, 929 S.W.2d 271, 277 (Mo. App.1996). "The right to obtain future medical treatment should not be denied merely because it has not yet been prescribed or recommended as of the date of the date of the workers' compensation hearing." *Mathia*, 929 S.W.2d at 277. Or, as was said in *Lutman, supra.* "[T]he compensation law does not require a workman to wait until he finds himself totally disabled in order to file a claim for compensation." *Id.* at 707.

## ANALYSIS

■ In his first point on appeal, Mickey contends that the workers' compensation statutes should be interpreted to allow the award of a modified vehicle. This court agrees.

Under Missouri case law, this is a case of first impression; there is no Missouri case which addresses whether an award of van modifications is allowable under the statute. Respondent contends that Section 287.140 should be construed narrowly, and the only compensable items are those specifically mentioned in the statute. Respondent argues that the statute sets out what can be awarded and courts "can *not* award benefits that are not allowed and not specified in the statutory scheme." It seems that Respondent's contention is that items not specifically enumerated under the stature *cannot* be awarded. However, at oral argument in answer to a question whether Mickey had been provided a wheelchair, Respondent's counsel agreed that he had. When questioned by this court regarding whether a wheelchair, which is not specifically mentioned, is authorized by the statute, counsel answered that it is "an artificial device akin to an orthopedic joint." *See* § 287.140.8, *supra.* Respondent seems to argue that although some items can be awarded which are not specified in the statute, the expense of van modifications isn't one of them.

Courts in other jurisdictions have addressed this issue. Many of these courts have found, under the particular facts before them, an obligation to provide modifications to a van to accommodate a wheelchair. These courts found such an obligation to exist "under compensation statutes with [little or] no more specificity than [Section 287.140's 'medical...treatment']." *R & T Constr. v. Judge*, 323 Md. 514, 594 A.2d 99, 105 (1991)(held that modifications to claimant's home included within the concept of "medical treatment"). In *Terry Grantham Co. v. Industrial Comm'n of Arizona*, 154 Ariz. 180, 741 P.2d 313, 316 (1987), the court

upheld the ruling of the administrative law judge, holding that the van is "a reasonably required 'other apparatus.'" In *Manpower Temporary Services v. Sioson,* 529 N.W.2d 259, 264 (Iowa 1995), the court found the van to be an "appliance, not greatly different from crutches or a wheelchair," and found that a van "is necessary in order to make [the] wheelchair fully useful." The court in *Wilmers v. Gateway,* 227 Mich.App. 339, 575 N.W.2d 796 (1998), found that under the particular set of facts before them, the "entire specially equipped van... and not just its special modifications, may be considered a reasonably necessary 'appliance.'" The *Wilmers* Court found that the clear purpose of their Workers' Compensation Act, which is similarly worded to Missouri's statute, is "to provide the injured employee with such services and products as are reasonably necessary to cure or relieve the effects of injury," and the evidence indicated that one of the effects of plaintiff's injury was a loss of mobility. *Id.* at 799. In *Phillips Petroleum Co. v. Carter,* 914 P.2d 677, 679 (Okl.Civ.App.1995), the court held that "specially equipped vans are compensable medical treatment/apparatus." The court found that the addition of a lift to her van, like the wheelchair which was provided to her, was a necessary apparatus, as contemplated under the statute. *Id.* The court stated that, "[w]here an...injury necessitates the modification or substitution of an automobile in order to accommodate a wheelchair ...and to restore in part...former ambulatory ability, such costs may be awarded as 'other apparatus.'" *Id.* The *Phillips* court agreed with *Rieger v. Workmen's Compensation Appeal Bd.,* 104 Pa.Cmwlth. 42, 521 A.2d 84, 87 (1987), stating, "if a wheelchair is necessary, then it logically follows that minor modifications needed to facilitate the use of the appliance must also be considered a necessity." See also *Langford v. William Rogers,* 144 A.D.2d 785, 534 N.Y.S.2d 761 (1988)(reasonable modifications needed to facilitate the use of a wheelchair fall within the concept of "other attendance or treatment"). The *Rieger* court addressed whether modifications to the claimant's home and automobile could be included under the definition of "supplies" or "orthopedic appliances." *Rieger,* supra at 86. The court pointed out that "a wheelchair is, by common usage, an orthopedic appliance." *Id.* The court pointed out that the claimant must use a wheelchair, and it "is likewise clear that all of the remodeling done upon the claimant's home was to permit him to utilize his wheelchair." The court was "certain that devices to aid in the use of wheelchairs fit within the above definition of 'orthopedic.'" Another case demonstrating where a court awarded compensation for a benefit that was not specifically mentioned in the statute was *Crouch v. W.Va. Workers' Comp. Comm'r,* 184 W.Va. 730, 403 S.E.2d 747 (1991)(concluding that an automobile can be interpreted as a "mechanical appliance"). The court interpreted the statute liberally, ruling that "[t]hat which is necessarily implied in a statute, or must be included in it in order to make the terms actually used have effect, according to their nature and ordinary meaning, is as much a part of it as if it had been declared in express terms." *Id.* at 750.

Like the *Wilmers'* court, "[w]e acknowledge that there are decisions from courts in some other states that deny worker's compensation coverage of specially equipped cars and vans on the ground that such vehicles simply do not constitute a medical apparatus or device." *Wilmers,* 575 N.W.2d at 800. However, this court is persuaded that under the particular circumstances of this case, modifications to a van to accommodate the loading and unloading of a wheelchair qualify as medical treatment under Section 287. Despite the split of authority among jurisdictions, a comparison of the Missouri statute with that of other states, when coupled with the overarching purpose of Missouri's Workers' Compensation law, suggests that a

reasonable interpretation of the statute would be to compensate Mickey for any necessary modifications to his vehicle.

Sections 287.140.1 and 287.140.8 "read together indicate that the employer is required to provide future medical care and artificial devices to relieve the effects of work-related injuries." *Wildman v. Plaza Motor Co.*, 941 S.W.2d 718, 720 (Mo.App. 1997). In *Wildman*, the court held that dental care was included within the definition of medical treatment in Section 287.140.1, and further, the court did not find the list of artificial devices in Section 287.140.8 to be exclusive. "Section 287.140.8 requires employers to provide artificial devices to relieve the effects of work-related injuries to its employees. The legislature could not be expected to include in this section an exhaustive list of every possible artificial device available currently or in the future." *Id.* Respondent has conceded that a wheelchair is akin to an orthopedic joint, and therefore meets the requirements of the statute, which requires the employer to provide future medical care and artificial devices to relieve the effects of work related injuries. There is nothing in the statute that would prevent the alterations of a van from being similarly construed.

Although van modifications are not specifically mentioned in the statute, it is a form of medical treatment designed "to cure and relieve from the effects of the injury." Section 287.140.1. This court finds that the award of van modifications in favor of Mickey, to relieve him of the pain that is caused by maneuvering his wheelchair in and out of a vehicle, is in keeping with the humane purpose of the statute. The employer/insurer would be required to pay if Mickey were to sustain an injury to his back pulling the wheelchair into a vehicle, or were to have to pay a nurse to load his wheelchair into the vehicle and take care of him. It is illogical to deny the van modifications, which would prevent inevitable, compensable future injuries.

"[T]he intent of the act is not that claimant be forced either to rely upon the charity of his family and friends or to rely upon hired assistance in order to perform those daily tasks, duties, and business . . . he was previously able to perform, when a simple . . . remedy is available." *R & T Constr. v. Judge*, A.2d at 105. Further, "a body of professional and public opinion supports 'mainstreaming,' to the fullest extent possible, for severely disabled persons." *Id.* at 108. In the case at bar, Mickey is not asking for modifications that are merely for convenience; they are, rather, requested for their medical benefit. The benefit being that Mickey not suffer pain or subject himself to possible injury every time he needs to get into a vehicle. Mickey's effort to remain independent should not be thwarted.

## MEDICAL NECESSITY

In Appellant's remaining point, he contends that the administrative law judge erred in finding that there was no medical necessity, as is required by statute. It is Respondent's contention that there were insufficient facts from the testimony and exhibits to support a finding of "medical necessity" for a modified vehicle.

Dr. Stuckmeyer testified that Mickey currently suffers from back pain, and that his complaints of "persistent low back pain and spasm" can be attributed, at least in part, to maneuvering his wheelchair in and out of his vehicle. The doctor also testified that a van customized with a wheelchair lift would not only be safer for Mickey, but would decrease "rotational stress" on his back. The doctor also testified that Mickey's back problems, and problems loading the wheelchair into the vehicle will likely increase with time and age. Mickey himself testified regarding the pain and difficulties associated with pulling his wheelchair into the vehicle. Although Mickey is presently able to get the wheelchair into the vehicle, he does so with much effort and with some pain. Further, his present level of physical capabilities is due in part to his efforts to maintain good

upper body strength. This court holds that under these facts, there was sufficient evidence to support a finding that there is a present medical necessity for a wheelchair lift.

## ULTIMATE QUESTION AND DECISION

■ What remains is this: Under the strict reading of 287.140, the renovation of a van for a person injured in an industrial accident is not contemplated — the statute speaks in terms of the efforts of a health care provider to heal. The broad intendment of the workers' compensation statute is to extend the benefits of the law to the fullest measure. The conflict, and indeed the dichotomy presented in the set of facts presented in the case at bar, is that if the paraplegic workman is not afforded some relief from having to lurch and strain to negotiate a wheelchair in and out of a van, then he will surely need future medical treatment. Medical treatment the employer may ultimately be responsible for as growing out of his original compensable injury. To say that chapter 287, and the life of the claimant, is benefited by denying modification of the van seems to grind against the purpose of the law. This court will not interpret the statute here to deny the Commission the power to order compensation which would have a protective effect, and require the deterioration of Mickey until he needs an operation, before affording some relief. The claimant here is attempting to make the best of a bad situation. He should not be thwarted in his effort to establish independence of travel. He does not seek anything other that a utilitarian modification that will allow him travel without harming a back that has left him without use of his legs.

There was sufficient medical evidence in this case to show present back pain and a reasonable probability that serious physical problems will result from use of a vehicle without a lift. The court determines as a matter of law, under these facts, the employer may be required to make the modest investment in the claimant's request so as to not cause irreparable

injury. This decision should not be interpreted to provide the support for relief in cases which contain facts beyond those facts presented here.

One final determination must be made. The claim here was for the entire cost of a van, modified to accommodate a lift. It appears that a regular automobile may not be suitable for such a lift. As recounted earlier, Mickey has been using a borrowed car for transportation. Courts have wrestled with the costs, and any apportionment of those costs related to the purchase or lease of a van and the operational costs. In *Brawn v. Gloria's Country Inn,* 698 A.2d 1067 (Me.1997), the court emphasized that the issue whether an employer may be required to provide a medically adapted van for an injured employee may be divided into three categories: 1) those that deny reimbursement not only for vans, but also for modifications to cars or vans. *R & T Constr. Co. v. Judge,* 323 Md. 514, 594 A.2d 99 (1991); *McDonald v. Brunswick Elec. Membership Corp.,* 77 N.C.App. 753, 336 S.E.2d 407, 409 (1985); 2) those that hold that modifications are reimbursable but have not required employers to pay the full cost of the van. *Meyer v. North Dakota Workers Compensation Bureau,* 512 N.W.2d 680, 684 (N.D.1994); *Crouch v. West Virginia Workers Compensation Comm'n,* 184 W.Va. 730, 403 S.E.2d 747, 750–51 (1991) and those that have required the employer to pay the cost of both the van and the modifications, *Terry Grantham Co., v. Industrial Comm'n,* 154 Ariz. 180, 741 P.2d 313, 316–17 (1987); *Manpower Temporary Services v. Sioson,* 529 N.W.2d 259, 263–64 (Iowa 1995).

While this court will concede that claimant would not have to purchase a specially equipped van were it not for the injury that befell him, the logic applied in both *Meyer* and *Crouch* is reasonable and should govern the case at bar. In *Crouch,* the court awarded the cost of an average, mid-price automobile of the same year as the purchased van, to be deducted from the cost of the converted van. *Crouch,* 403 S.E.2d at 751. Similar to both *Crouch* and *Meyer,* claimant would have owned an au-

tomobile regardless of his injury. Moreover, claimant will be responsible for the van's repair, fuel, title, license, and insurance costs. This court is persuaded by the reasoning annunciated in *Manpower Temporary Services v. Sioson*, 529 N.W.2d 259 (Iowa 1995), where the court determined that claimant should bear these expenses because the van would be in her control.

The cause is reversed and remanded to the Industrial Commission to conduct a hearing to determine the extent of the employer and insurer's obligation, consistent with this opinion, to Mickey.

All Concur.