Cindy DeLONG, Claimant/Respondent,

v.

HAMPTON ENVELOPE COMPANY,
Employer/Appellant.

No. ED 84418.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 9, 2004.

Scott A. Hassebrock, St. Louis, MO, for appellant.

Swaney, Ram, Wayman & Healey, St. Louis, MO, for respondent.

Before LAWRENCE E. MOONEY, P.J. and LAWRENCE G. CRAHAN, J. and MARY K. HOFF, J.

## OPINION

PER CURIAM.

Hampton Envelope Company (Employer) appeals the final award of the Labor and Industrial Relations Commission (Commission), which adopted, in part, and modified, in part, the award of worker's compensation benefits to Cindy DeLong (Claimant) by the administrative law judge (ALJ). We affirm the award of the Commission and grant Claimant's motion for frivolous appeal and sanctions pursuant to Rule 84.19.

### Facts

On April 17, 2001, Claimant was working for Employer when she sustained a work-related injury. While operating a punch press, Claimant suffered a traumatic amputation of her left-middle finger at the distal joint. Claimant's boss took Claimant to the hospital, where Dr. Harold E. Dunn (Dunn), a hand specialist, performed replantation surgery to reattach the finger. The procedure, however, was unsuccessful. On May 4, 2001, Dunn performed revision amputation surgery to remove the injured part of the finger. Claimant filed a claim for compensation with the Division of Workers' Compensation (Division) on April 27, 2001, ten days after her injury. Claimant did not return to work for Employer and did not work at all for approximately three-and-one-half months following her injury and subsequent surgeries. Employer paid Claimant temporary total disability benefits during the months she did not work.

Claimant remained under Dunn's care for approximately one year. During the course of treatment, Dunn referred Claim-

ant to a physical rehabilitation facility for therapy on her affected hand. In April 2002, Dunn prescribed a custom-made prosthetic finger for Claimant. Employer and its insurance company, however, denied Claimant had any medical need for the prosthesis and refused to provide it. In June 2002, Claimant filed a motion for a hardship hearing in which she requested the Division to grant a temporary award directing Employer to pay for the prescribed prosthesis, but Employer maintained its refusal. In November 2002, Claimant filed a motion for uncontroverted benefit in which she requested the Division to compel Employer to pay for the prescribed prosthesis, but Employer continued to refuse to provide it.

In August 2003, at the hearing before the ALJ, the parties stipulated that Employer would pay Claimant disability benefits of $200 per week for 28.6 weeks and would pay any and all medical bills related to the treatment of Claimant's injury. The parties agreed that the only issues to be resolved by the ALJ were whether Employer would be required to provide Claimant with a middle-finger prosthesis and related care and maintenance for the rest of Claimant's life and whether Employer would be responsible for Claimant's attorney's fees and expenses. As evidence of her need for the prosthesis, Claimant offered her own testimony regarding her injury and subsequent treatment, the medical records of Dunn, the deposition of Dr. Bruce Schlafly (Schlafly), and exhibits concerning attorney's fees and expenses.

Claimant testified that she suffers from severe pain in the stump of the amputated finger during cold weather. She also testified that she has difficulty doing everyday activities, including sewing, tying her shoes, and turning pages in books and magazines. Claimant believes the prosthesis would give her "leverage, something to

work with." Claimant further testified that she thinks about her amputation every day, and she typically wears a Band-Aid to cover the residual stump because she "feel[s] like people are either looking at [her] or talking about [the amputated finger]...." Claimant is self-conscious about whether a prospective employer will hire her because, if the prospective employer notices the amputated finger, "they may automatically think well, she can't do this job." Claimant stated that the prosthesis would help her physically, but it also would help her psychologically and emotionally to feel less embarrassed and would enhance her employment opportunities.

On cross-examination, Claimant testified that, when she performs her current job duties as a quality-control inspector, the remaining part of her finger is uncomfortable because it is very sensitive to heat and cold and is sore. Claimant further testified that in winter she experiences excruciating pain in the tip of the residual stump, and she wears mittens at times to help curb the sensitivity. On re-direct examination, Claimant stated that Dunn sent her to physical therapy with the objective of eventually obtaining a prosthesis. She also testified that Dunn had said Claimant could not be fitted for a prosthesis until the swelling in the residual stump subsided because the prosthesis would not fit correctly.

The medical records of Dunn, which included the written prescription for a custom-made prosthetic finger, corroborated Claimant's testimony and indicated that the prosthesis is necessary to protect the residual stump and to aid in the functioning of Claimant's affected hand and finger. Dunn's medical records also indicated that Claimant's treatment was focused on preparing Claimant for the prosthesis. In his notes, Dunn described Claimant's progress and ordered continued physical therapy in which Claimant's residual stump was to be measured for swelling. Dunn also monitored the finger for range of motion and healing. The deposition testimony of Schlafly indicated that Schlafly agreed with Dunn's recommendation for a prosthesis. Schlafly testified that the prosthesis could provide a functional benefit to Claimant by allowing Claimant's hand and the remaining part of the amputated finger to perform as a unit, by alleviating Claimant's anxiety about the appearance of the amputated finger, and by increasing the ease with which she performs daily activities.

In its defense, Employer argued that Claimant has no medical need for the prosthesis and that the prosthesis is not reasonably related to Claimant's care or intended to relieve her of the effects of the amputation. To support its position, Employer offered the deposition testimony of Dr. David Brown (Brown). Brown's testimony indicated that, while he did not believe the prosthesis is necessary to improve the functioning of Claimant's affected hand and finger, he believed the prosthesis could benefit Claimant emotionally and psychologically. Brown further testified that, like cosmetic surgery, a cosmetic prosthesis can camouflage an amputation and can help patients who have suffered a traumatic injury and disfigurement feel better about themselves.

Based on the evidence presented, the ALJ found that Claimant had sustained the amputation of her finger while working for Employer. The ALJ further found that Dunn had prescribed the prosthesis to help the functioning of Claimant's affected hand and finger, as well as to help Claimant cope with the psychological effects of the amputation. The ALJ found the evidence of Dunn's opinion and Schlafly's belief that Claimant should be provided with the prosthesis for the rest of her life "very

credible." The ALJ further found Employer's refusal to provide Claimant with the prescribed prosthesis and associated medical care was without reasonable grounds, and, therefore, assessed the whole cost of the proceedings against Employer. In its award, the ALJ ordered Employer to: 1) provide Claimant with the prosthesis and pay all of the costs associated with the maintenance, care, and replacement of the prosthesis during Claimant's lifetime; 2) pay Claimant permanent partial disability benefits of $200 per week for 28.6 weeks; 3) pay Claimant disfigurement benefits of $200 per week for 10 weeks; 4) pay Claimant's attorney's fees and expenses as costs of the proceedings; and 5) pay all medical expenses relating to Claimant's injury, including the prosthesis and any other physical or psychological care calculated to cure or to relieve the physical or psychological effects of the amputation. The ALJ also granted Claimant's attorney a twenty-five percent lien on all the benefits included in the award.

Employer timely filed its application for review of the ALJ's award to the Commission. After reviewing the evidence, hearing the parties' arguments, and considering the whole record, the Commission found that the ALJ's award was supported by competent and substantial evidence and was made in accordance with the Missouri Workers' Compensation Act (Act). The Commission adopted the ALJ's finding that the prosthesis was prescribed to help the functioning of Claimant's hand and finger, not for only cosmetic purposes. The Commission also adopted the ALJ's conclusion that Employer is liable to Claimant for her injuries resulting from the work-related accident and has a duty to provide her with a prosthesis under Section 287.140 RSMo 2000 [1].

The Commission gave Employer the benefit of the doubt regarding the legitimacy of its defense in the proceeding before the ALJ, reasoning that parties to a dispute over workers' compensation benefits should have an opportunity to present their legal theories, and reversed the ALJ's assessment of the whole cost of the ALJ proceeding against Employer. The Commission, however, subsequently found that, in light of the ALJ's "clearly articulated decision" concerning Employer's statutory duty to provide the prosthesis, Employer was without reasonable ground to further deny Claimant of benefits and to pursue appeal of the ALJ's decision to the Commission. As a result, the Commission: 1) assessed the whole cost of the proceeding before it against Employer and ordered Employer to pay Claimant's attorney's fees in the amount of $1,800 as costs of the proceeding; 2) adopted the ALJ's award of permanent partial disability and disfigurement benefits, the prosthesis, and any future medical treatment and medical bills related to the maintenance, care, and replacement of the prosthesis; and 3) affirmed the ALJ's grant of a twenty-five percent attorney's lien on the benefits awarded to Claimant but limited the grant to the benefits included in the Commission's final award. Employer now appeals the final award of the Commission.

*Standard of Review*

On appeal, in the absence of fraud, the findings of fact made by the Labor and Industrial Relations Commission shall be conclusive and binding. Section 287.495.1. We review the Commission's award of workers' compensation benefits only on questions of law, and we may modify, reverse, remand for rehearing, or set aside an award only if: 1) the Commission acted without or in excess of

1. All subsequent statutory citations are to RSMo 2000, unless otherwise indicated.

its powers; 2) the award was procured by fraud; 3) the facts found by the Commission do not support the award; or 4) the record does not contain sufficient competent evidence to warrant the making of the award. *Id.; Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222 (Mo. banc 2003). Considering the whole record, we must determine whether there exists sufficient competent and substantial evidence to support the award. *Hampton*, 121 S.W.3d at 223. We do not reweigh the evidence; the Commission is the judge of the weight to be given to conflicting evidence and the credibility of the witnesses. *Negri v. Continental Sales & Service*, 139 S.W.3d 565, 569 (Mo.App. E.D.2004); *citing Hampton*, 121 S.W.3d. at 223.

*Discussion*

■ Employer presents two points on appeal. In its first point, Employer argues the Commission erred in ruling that Employer is responsible for providing Claimant with a prosthesis and all costs associated with the maintenance, care, and replacement of the prosthesis for the remainder of Claimant's life. Employer further argues that the Commission's award is not based on competent substantial evidence in the record because the evidence established that the prosthesis would provide Claimant with only a cosmetic benefit, is not medically necessary to cure or relieve Claimant of the effects of her injury, and is not medically necessary to provide functional, emotional, or psychological benefits. We disagree.

In addition to all other compensation, an employer shall provide an injured employee with such medical, surgical, chiropractic, and hospital treatment, including nursing, custodial, ambulance, and medicines, as reasonably required after the injury or disability, to cure and relieve the employee from the effects of the injury. Section

287.140.1. Whenever the Division or the Commission finds that an employee may be partially or wholly relieved of the effects of a permanent injury by the use of artificial legs, arms, hands, surgical orthopedic joints, eyes, or braces, the Division or Commission may require an employer to furnish the injured employee with such aids, as needed, for the remainder of the employee's life. Section 287.140.8.

■ One of the purposes of the Act is to place on industry the burden of losses sustained by employees as a result of their employment; consequently, Missouri courts will broadly and liberally construe the Act to effectuate that purpose. *Wildman v. Plaza Motor Co.*, 941 S.W.2d 718, 720 (Mo.App. E.D.1997); *Hall v. Fru Con Const. Corp.*, 46 S.W.3d 30, 34 (Mo.App. E.D.2001); *Mickey v. City Wide Maintenance*, 996 S.W.2d 144, 148 (Mo.App. W.D. 1999) (overruled in part on other grounds by *Hampton*, 121 S.W.3d 220). The Act also should be interpreted to extend benefits to the largest possible class of employees. *Wildman*, 941 S.W.2d at 720; *Mickey*, 996 S.W.2d at 148. Accordingly, when read together, Sections 287.140.1 and 287.140.8 indicate that an employer is required to provide an employee with medical care and artificial devices where they either wholly or partially relieve the effects of a work-related injury. *Wildman*, 941 S.W.2d at 720; *Fru Con Const. Corp.*, 46 S.W.3d at 34; *Mickey*, 996 S.W.2d at 151. Moreover, we recognize that the list of artificial devices contained in Section 287.140.8 is not exclusive because the legislature could not be expected to include an exhaustive list of every possible artificial or prosthetic device available now or in the future. *Wildman*, 941 S.W.2d at 720 (award of future dental benefits to injured employee, including replacement of artificial dental devices, consistent with policy of extending benefits to largest possible

class of workers); *Fru Con Const. Corp.,* 46 S.W.3d at 34 (medically-necessary modifications to home of injured, wheelchair-bound employee covered by Sections 287.140.1, .8); *Mickey,* 996 S.W.2d at 151 (award of medically-necessary modifications to vehicle of injured, wheelchair-bound employee consistent with purpose of Act).

In this case, Employer maintains that it does not have a legal duty to provide Claimant with the prescribed prosthesis because it is only for cosmetic benefit, Claimant has no medical need for the prosthesis, and the workers' compensation statute was not intended to cover the cost of a prosthesis unless it provides an injured worker with a functional benefit. On the contrary, we find that Employer clearly is under a statutory duty to provide Claimant with the prescribed prosthesis and future medical care related to the maintenance, care, and replacement of the prosthesis because the prosthesis will relieve Claimant, to a degree, of the negative effects associated with her amputated finger. Furthermore, the substantial and competent evidence in the record demonstrates that Claimant will receive functional benefits from the prosthesis, both physical and psychological. First, Claimant testified that the prosthetic finger would allow her to perform certain job duties better than she could perform them without the prosthesis and would help her to feel better about herself and her ability to obtain increased, and perhaps different, employment opportunities. Second, the records of Dunn, a hand specialist and the authorized treating doctor, indicated that the prosthetic finger would protect Claimant's residual stump and would help in the functioning of her affected hand and finger. Third, the depositions of both Schlafly and Brown indicated that, even if the prosthesis provided a cosmetic benefit, such a benefit would be a positive influence on

Claimant's psychological and emotional well-being. Thus, we find that Employer has a statutory duty to provide Claimant with the prescribed prosthesis and future medical care, and competent and substantial evidence in the record supports the Commission's award of such benefits to Claimant. Point denied.

■ In its second point, Employer argues the Commission erred in ruling that Employer is responsible for Claimant's attorney's fees as costs of the proceeding before the Commission. Employer further argues that the Commission's award of attorney's fees was not based on competent substantial evidence in the record because Employer's appeal to the Commission was not without reasonable grounds.

■ Generally, costs of a proceeding before the Division or the Commission shall be paid out of the state treasury from the fund for the support of the Division. Section 287.560; *Landman v. Ice Cream Specialties, Inc.,* 107 S.W.3d 240, 251 (Mo. banc 2003) (overruled in part on other grounds by *Hampton,* 121 S.W.3d 220). However, as an exception to the general rule, the Division or the Commission may assess the whole cost of the proceedings upon a party who, without reasonable ground, brought, prosecuted, or defended a proceeding before the Division or Commission. Section 287.560; *Landman,* 107 S.W.3d at 251. The Commission should exercise its discretion to assess the cost of the proceedings under this section where the issue is clear and the offense is egregious. *Landman,* 107 S.W.3d at 250. The "whole cost of the proceedings" includes all amounts the innocent party expended throughout the proceeding brought, prosecuted, or defended without reasonable grounds, including attorney's fees. *Landman,* 107 S.W.3d at 252. In *Landman,* the Missouri Supreme Court reasoned that

legal fees are the largest cost incurred by an employee who is forced to sue an employer to recover worker's compensation benefits. *Id.* There, the Court further reasoned that including attorney's fees in the whole cost of the proceeding makes the sanction under Section 287.560 meaningful and furthers the goal of providing a quick recovery to injured employees without the expenses and delays associated with litigation. *Id.*

In this case, the ALJ found that Employer had unreasonably refused to provide Claimant with a prosthesis, even after Dunn, a hand surgeon and the treating physician, had prescribed the prosthesis. As a result, the ALJ assessed the whole cost of the proceedings against Employer and ordered Employer to pay the full amount of Claimant's attorney's fees and expenses as those costs, an amount that was supported by competent and substantial evidence in the record in the form of Claimant's motion for costs and fees, supporting affidavit, and documentation. In modifying the ALJ's award on this point, we note that the Commission actually *lowered* the amount of sanctions assessed against Employer by the ALJ. However, the Commission also concluded that, although Employer was entitled to present its defense at the ALJ proceeding, in light of its statutory duty to provide Claimant with the prosthesis, the evidence in the record, and the ALJ's decision, Employer's appeal to the Commission was without reasonable ground. Moreover, the language used by the Commission in sanctioning Employer indicates that the Commission found Employer's continued refusal to provide the prescribed prosthesis offensive, and it sought to ensure an end to the cost and delay Claimant had incurred in litigating her claim. *Landman,* 107 S.W.3d at 252. Thus, we find that competent and substantial evidence in the record supports the Commission's assessment of costs against Employer. Point denied.

 With regard to Claimant's motion for frivolous appeal and sanctions, we find that, based on the substantial and competent evidence in the record, Employer's continuing failure to provide Claimant with a prosthesis is without reasonable grounds. Moreover, the cost of providing the prosthesis might have been less than the cost incurred by the parties to litigate Employer's appeals to the Commission and to this Court. Employer's delay of over two-and-one-half years in providing Claimant with the needed prosthesis and corresponding treatment was not only without reasonable grounds, but also, undoubtedly, has been a psychological detriment to Claimant. Additionally, we remind Employer that the purpose of the Act is to make an injured employee whole and to restore the employee's ability to work, either at the job the employee had when injured or a different one. We also note that without the workers' compensation statutes, employees would sue their employers for treatment made necessary by work-related injuries. Worker's compensation serves a dual role in that it provides employees with treatment for work-related injuries and protects employers from multiple lawsuits by employees and imposes monetary restrictions on awards. Here, Claimant suffered a work-related injury for which the authorized treating doctor prescribed treatment, and Employer has a statutory duty to provide that treatment. In light of the prior proceedings before the ALJ and the Commission, Employer could not have concluded in good faith that we would reverse the Commission's award. *See Wieda v. Stupp Bros., Inc.,* 52 S.W.3d 602, 603 (Mo.App. E.D.2001). Therefore, we grant Claimant's motion for sanctions for frivolous appeal, pursuant to Rule

84.19, in the amount of $10,000 assessed against Employer.

We affirm the final award of the Commission, including the Commission's award of $1,800 in attorney's fees to Claimant as costs of the proceedings and the grant of a twenty-five percent lien to Claimant's attorney on the benefits awarded.